DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC
v DEPARTMENT OF TREASURY

Docket No. 264323. Submitted February 8, 2006, at Lansing. Decided July 25, 2006, at 9:00 a.m. Leave to appeal sought.

DaimlerChrysler Services North America LLC brought an action against the Department of Treasury in the Court of Claims to obtain relief under the "bad-debt provision" of the General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, for overpaid tax revenue resulting from the financed sales of motor vehicles to consumers by the plaintiff's affiliated dealers. The court, Joyce Draganchuk, J., on cross-motions for summary disposition, granted summary disposition in favor of the defendant after determining that the plaintiff was not a "taxpayer" for purposes of the bad-debt provision and that there was no nexus between the alleged bad debt and the dealers' sales of the motor vehicles. The plaintiff appealed.

The Court of Appeals *held*:

1. The Court of Claims erred in analyzing the facts under the amended version of the GSTA rather than the version in force at the time the cause of action accrued. Application of the correct provision entitles the plaintiff to recover the overpayment that resulted when its expected sales proceeds were not received.

2. The plaintiff was a "taxpayer" under the statutory definition in effect when the plaintiff filed its claims because, although a "taxpayer" was defined in the singular as "a person," which arguably applied only to the individual dealers who sold the motor vehicles, the definition of "person" included a "group or combination acting as a unit," which encompassed both the dealers and the plaintiff in its capacity as the financing company. This conclusion is consistent with previous analyses of similar statutory language and with the express purpose of the GSTA.

3. The amount that the plaintiff overpaid was related to "sales at retail" as defined in the GSTA because the transactions at issue were sales attended by the laws and amenities of the place of sale, with the amenity in question being the availability of financing.

Reversed and remanded for further proceedings.

*Bodman, LLP* (by *Joseph J. Shannon* and *Alicia J. Blumenfeld*) and *Akerman Senterfitt* (by *David E. Otero, Peter O. Larsen*, and *Cynthia DeBula Baines*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Heidi L. Johnson-Mehney*, Assistant Attorney General, for the defendant.

Before: WILDER, P.J., and ZAHRA and DAVIS, JJ.

ZAHRA, J. This case raises the question whether plaintiff is entitled to relief under the bad-debt provision of Michigan's General Sales Tax Act (GSTA), MCL 205.51 *et seq.* Plaintiff overpaid tax revenue to defendant for motor vehicles sold to consumers by plaintiff's affiliated dealers. Plaintiff sought relief under the bad-debt provision, which allows taxpayers to recover overpayment when expected sales proceeds are not received. The Court of Claims granted summary disposition for defendant, finding that plaintiff was not a "taxpayer" for purposes of the bad-debt provision. The court also found no nexus between plaintiff's alleged bad debt and the retail sales of the automobiles by the dealers. We hold that plaintiff was a taxpayer under the bad-debt provision, that a nexus existed between the bad debt, plaintiff, and the retail sales; and that plaintiff may recover overpayment under the GSTA's bad-debt provision. Therefore, we reverse the Court of Claims and remand for entry of an order denying defendant's motion for summary disposition and granting plaintiff's motion for summary disposition. On remand, the court shall also conduct all proceedings necessary to determine the amount to be recouped, including interest, if applicable.

I. BASIC FACTS AND PROCEDURE

The facts in this case are not in dispute. Plaintiff financed consumers' purchases of motor vehicles from its affiliated dealers. If a consumer sought to purchase a motor vehicle, plaintiff determined whether it would finance the purchase. If financing was approved, the consumer purchasing the motor vehicle entered into a retail installment sales contract with the dealer, and a security interest in the vehicle was retained by the dealer. Concomitantly, plaintiff had financing agreements with each of the dealers governing their relationship. The financing agreements provided that plaintiff would purchase qualifying contracts from the dealers in exchange for assignment of all the dealers' rights in the contracts. At or near the time of the sales of the vehicles from the dealers to the consumers, the dealers assigned to plaintiff all rights, titles, and interests in the qualifying contracts, including the dealers' rights as secured parties. At that same time, plaintiff paid the dealers all amounts due under the contracts, including the sales tax on the full purchase price of each motor vehicle. The dealers then remitted the sales tax revenue to defendant. Plaintiff also was assigned the right to repossess the vehicles when consumers defaulted on their contracts. These assignments provided in part: "In return for purchase of this contract, the Dealer sells to Assignee . . . the entire interest in this contract; and authorizes Assignee to collect and discharge obligations of the Contract and its assignment."

Subsequently, purchasers under several of the installment contracts defaulted. Despite plaintiff's efforts to repossess and resell the vehicles at issue, unpaid balances remained due to plaintiff on some of the contracts. Plaintiff determined that all the contracts that are the subject of this case became worthless and

uncollectable. Plaintiff claimed such debts as bad-debt deductions for federal tax purposes. As plaintiff determined that certain contracts assigned to it were uncollectable, it also determined that, because of the bad debt, it had overstated its gross receipts and, therefore, had overpaid state sales taxes in the amounts of $1,263,528.00 and $2,554,729.13 on separate occasions. Consequently, plaintiff sought relief under the bad-debt provision by filing claims with defendant in January 1998 and March 2000, using the informal hearing process, and seeking a refund or deduction on its alleged overpayment. The hearing referee recommended denying plaintiff relief, reasoning in part:

> The three issues challenged were whether [plaintiff] . . . was the "taxpayer," the bad debt deduction, and whether the claim was related to the sale at retail. [Plaintiff's counsel] . . . outlined the purchase of vehicles involving [plaintiff, saying that plaintiff] . . . was "there" throughout the retail transaction and took all rights to the contract when the consumer defaulted in payments. . . .
>
> \* \* \*
>
> [Plaintiff] . . . was not the seller of the motor vehicle, and the taxable moment attached when ownership of the vehicle was transferred from the dealership to the purchaser.
>
> The statutory language requires the seller at retail to pay the tax (for the "privilege" of selling tangible personal property (vehicles) at retail within Michigan) and the seller at retail "may" pass it on to the purchaser. The conclusion is that, since only the seller at retail is obligated to pay the tax (not the Petitioner here), only the seller at retail is entitled to the bad debt deduction. The bad debt must be related to a sale at retail when ownership is transferred from the vehicle dealership to the purchaser.
>
> [Plaintiff] . . . did not own the vehicles (at the time of purchase) . . . .

\* \* \*

[Plaintiff] . . . raised an argument as to whether "taxpayer" as the term is used in MCL 205.54i, was limited, and thus excluded . . . [plaintiff]. [Plaintiff] . . . can be a "taxpayer" in Michigan and not be the "taxpayer" for the bad debt deduction . . . . The terms a "sale at retail". . . and transfer of "ownership" limits [sic] the meaning of "taxpayer in [MCL 205.54i] . . . to the seller at retail. MCL 205.51(1)(m) defines "taxpayer" as the person subject to tax under the act. The seller at retail is the person subject to tax under the GSTA.

Plaintiff thereafter pursued the instant case in the Court of Claims, in which both plaintiff and defendant filed motions for summary disposition. In granting defendant's motion, the Court of Claims reasoned:

[Plaintiff] . . . claims that it's a taxpayer under [MCL 205.54i] because it is a registered seller in Michigan and pays substantial tax. . . . [T]he words of the statute must be read together. To be eligible for an exemption, a taxpayer must have a bad debt that is, in the words of the statute, quote, "related to a sale at retail," end quote.

In [the court's] view, this clearly requires a nexus between the bad debt and the sale. The sales at issue here are the sales made by the dealers under which they assigned their rights to [plaintiff] . . . .

\* \* \*

The statute also requires that the sales must be . . . "taxable under this act" . . . . The [GSTA] . . . does not apply to sales of services. The only potential sale that [plaintiff] . . . made would have been financing, which is not a transaction that qualifies as a sale at retail or that is taxable under the [GSTA] . . . .

[Plaintiff] further argues that it achieves a right of exemption by virtue of being assigned the dealers' rights and that it steps into the shoes of the dealers by virtue of the assignment . . . .

Both cases [cited by plaintiff in support of this argument] . . . involved assignment of a cause of action where a statute was either silent . . . or unclear. Neither case involved a tax statute.

Here, an assignee does not achieve the status of a person subject to the act and is not allowed a sales tax deduction under the act for a bad debt.

This appeal followed.

## II. ANALYSIS

Plaintiff argues, among other things, that (1) it is a taxpayer under the statute and (2) the bad debt was related to sales at retail. We agree.

### A. STANDARD OF REVIEW

Plaintiff appealed to the Court of Claims the department's denial of a bad-debt refund. MCL 205.22(1).[1] This Court accords great deference to an agency's determinations; our review is limited to clear error. *Bureau of Worker's & Unemployment Compensation v Detroit Medical Ctr*, 267 Mich App 500, 504; 705 NW2d 524 (2005). Therefore, we will overturn a lower court's

---

[1] While plaintiff filed a complaint seeking appellate review of the Department of Treasury determination, the litigants did not file appellate briefs and instead filed cross-motions for summary disposition under MCR 2.116(C)(10). The Court of Claims properly treated the action before it as an appeal. See *Jackson Community College v Dep't of Treasury*, 241 Mich App 673, 678-679; 621 NW2d 707; MCL 205.22(1). Generally, when a circuit court reviews the findings and conclusions of an administrative body, deference is accorded to the agency's factual findings. Here, the parties agree that no genuine issue of material fact existed before the Department of Treasury and the Court of Claims decided this matter by interpreting and applying the relevant statutes to the undisputed facts. Thus, no substantive or procedural harm resulted from the parties presenting their appellate issues in the form of motions under MCR 2.116(C)(10).

decision of an administrative appeal "only if we are left with the definite and firm conviction that a mistake has been made." *Id.* However, the substance of a determination by an administrative referee or trial court, if it involves a question of law such as statutory interpretation, is subject to review de novo. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 25; 703 NW2d 822 (2005), citing *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). Because the Court of Claims and the Department of Treasury premised their respective determinations on the interpretation and application of law to undisputed facts, our review is de novo.

### B. PLAINTIFF WAS A TAXPAYER UNDER THE STATUTE

#### 1. THE GENERAL SALES TAX ACT

The GSTA was substantially amended by 2004 PA 173. The amendments changed the language at issue in this case. As noted above, plaintiff filed its claims with defendant in 1998 and 2000, several years before the amended act took effect. From the record below, it is apparent that the trial court reached its conclusion by applying the amended statute (e.g., the trial court refers to the language "taxable under this act," which appears in the amended version of the bad-debt provision of the GSTA but not the version of the GSTA in place at the time the claim accrued).[2] This was an error. The court should have analyzed the facts under the statute in place at the time the cause of action accrued. See *Connelly v Paul Ruddy's Equipment Repair & Service Co*, 388 Mich 146, 149; 200 NW2d 70 (1972); MCL 600.5827. Further, the trial court's judgment cannot be

---

[2] Plaintiff, too, appears to have used the amended act in its motion before the court. See Plaintiff's Motion for Summary Disposition, p 8.

saved by retroactive application of the amended statute: "Amendments of statutes are generally presumed to operate prospectively unless the Legislature clearly manifests a contrary intent," *Tobin v Providence Hosp*, 244 Mich App 626, 661; 624 NW2d 548 (2001). The 2004 amendments of the GSTA do not provide for their retroactive application with regard to sales or recoupment of overpayment arising from bad debt. Moreover, the Legislature may neither extinguish existing rights nor create new obligations by application of a new statute—creating a bar to retroactivity when, as allegedly happened here, a taxpayer's right to recoup overpayment for bad debt vested upon satisfaction of all the statutory requirements. See *Karl v Bryant Air Conditioning Co*, 416 Mich 558, 572; 331 NW2d 456 (1982), quoting *Hughes v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979) (proscribing retroactivity if "the law 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past' "). Having concluded that the trial court's judgment regarding plaintiff's status was error because the court applied the wrong statute, which application cannot be made retroactively, we now turn to the statute in force at the time the claim arose.

## 2. THE MEANING OF "TAXPAYER"

Before 2004 PA 173 was enacted, the GSTA[3] defined "taxpayer" as "a person subject to a tax under this act." MCL 205.51(1)(m). Further, "person" was defined as

> an individual, firm, partnership, joint venture, association, social club, fraternal organization, municipal or private

---

[3] 1933 PA 167.

> corporation whether organized for profit or not, company, estate, trust, receiver, trustee, syndicate, the United States, this state, county, or any other group or combination acting as a unit, and includes the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context. [MCL 205.51(1)(a).]

Defendant argues that because the retailer is ultimately responsible for paying the tax on the proceeds from the sale, the taxpayer envisioned by the statute is the retailer—in this case, the dealers. Thus, defendant maintains, only the dealers are entitled to a bad-debt deduction. To support its theory, defendant points to the bad-debt provision of the GSTA, MCL 205.54i(2),[4] which reads in part: "[A] taxpayer may deduct the amount of bad debts from his or her gross proceeds[5] used for the computation of the tax."

Defendant claims this sentence stands for the proposition that a taxpayer must be a retailer because only a single retailer would have gross proceeds from sales. Further, defendant claims that plaintiff was not the retailer of the vehicles, was not subject to be taxed in their sales and, therefore, is ineligible for a bad-debt refund or deduction. On this point, the entire issue may be simply phrased: Can the word "taxpayer" mean more than a single retailer for purposes of the act?

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). The first criterion in determining intent is the language of the statute. *Halloran v Bhan*,

---

[4] This particular sentence was unchanged by 2004 PA 173, although substantial changes were made to other parts of MCL 205.54i(2).

[5] " 'Gross proceeds' means the amount received in money, credits, subsidies, property, or other money's worth in consideration of a sale at retail within this state . . . ." MCL 205.51(1)(i).

470 Mich 572, 577; 683 NW2d 129 (2004). Nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999). When the language is clear, courts are bound to follow it; but when the language is open to more than one interpretation, "judicial construction is proper to determine legislative intent. Statutory language should be construed reasonably, keeping in mind *the purpose of the act*." *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002) (Emphasis added; citation omitted.). Courts avoid "construing a statute in a manner that renders any part of it surplusage or nugatory." *S Abraham & Sons, Inc v Dep't of Treasury*, 260 Mich App 1, 15; 677 NW2d 31 (2003).

To determine whether plaintiff falls within one of the enumerated statutory definitions of "person" such that plaintiff could qualify as a "taxpayer" within the act, it is first necessary to characterize plaintiff's activity, if any, with respect to the sales at issue in this case. The Michigan Motor Vehicle Sales Finance Act (MVSFA),[6] MCL 492.101 *et seq.*, provides guidance. Under § 3 of the MVSFA, a person[7]

shall not engage in this state as a principal, employee, agent, or broker in either of the following unless that person is licensed as provided in this act:

(a) The business of an installment seller of motor vehicles under installment sale contracts.

---

[6] The primary purpose of the MVSFA is to protect consumers through licensing and procedural safeguards in motor vehicle sales. See *King v Ford Motor Credit Co*, 257 Mich App 303, 316; 668 NW2d 357 (2003).

[7] The definition of "person" under the MVSFA is virtually indistinguishable from that found in the GSTA: "an individual, partnership, association, corporation, governmental entity, or any other legal entity." MCL 492.102(2).

(b) The business of a sales finance company.

Further, § 2(6) of the MVSFA defines "sales finance company" as

> a person engaged as principal, agent, or broker in the business of financing or soliciting the financing of installment sale contracts made between other parties, and includes the business of acquiring, investing in, or lending money or credit on the security of the retail seller's interest in such contracts whether by discount, purchase, or assignment of those contracts, or otherwise. . . .

We conclude that, consistent with MCL 492.102(6), plaintiff was a sales finance company "financing installment sale contracts" between the dealers and the purchasers who defaulted on their loans. As noted above, the pre-2004 GSTA defined "taxpayer" as "a person subject to a tax under this act." MCL 205.51(1)(m). A "person" was defined as "an individual, firm, partnership, joint venture . . . *or any other group or combination acting as a unit* . . . . MCL 205.51(1)(a) (emphasis added.) The statute, by its plain language, contemplated a broad array of taxpayers. It also expressly declared that "any other group or combination" of persons may have been "acting as a unit," and, therefore, could have been considered as a single taxpayer.

Defendant concedes and we agree that the dealers, as retailers, fell under the statute—otherwise defendant would be owed no tax in the first place—even though the statute's definition of "person" contained no reference to "retailers" or "motor vehicle dealers." Given the fact that motor vehicle sales frequently require financing, and that plaintiff here was the financing company, we conclude that the dealers and plaintiff were "acting as a unit," i.e., as a single, taxable entity, for the purpose of the retail sales of automobiles. Any other

reading would render the language referring to a "combination" of persons "acting as a unit" nugatory.

Additional statutory analysis supports our conclusion. Before the 2004 amended act took effect, MCL 205.51(1)(b) read, in part: " 'Sale at retail' means a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made *in the ordinary course of the transferor's business*." (Emphasis added.)

"Business" was defined at MCL 205.51(1)(j) to include "an activity engaged in by a person *or caused to be engaged in by that person* with the object of gain, benefit, or advantage, *either direct or indirect*." (Emphasis added.)

Under the statute's language, the simple conclusion. is that the activities at issue were retail sales that were caused by plaintiff, and that such activity occurred in the "ordinary course" of the dealers' business; that the purpose of the activity was for the mutual gain, benefit, or advantage of the dealers and plaintiff; and that plaintiff's involvement was, at the very minimum, indirect.

Our conclusion is also consistent with prior analyses of similar statutory language, in which this Court examined whether two or more "persons" could act as one "taxpayer" or "person." In *Port Huron & Detroit R Co v Dep't of Treasury*, 106 Mich App 413, 420; 308 NW2d 237 (1981), this Court held that shareholders fell within the definition of "person" even though they bore no tax liability under the state's Single Business Tax Act (SBTA), MCL 208.1 *et seq*.[8] In that case, this Court

---

[8] The SBTA defines a "person" to mean "an individual, firm, bank, financial institution, limited partnership, copartnership, partnership, joint venture, association, corporation, receiver, estate, trust, or any other group or combination acting as a unit." MCL 208.6(1).

analyzed statutory definitions of "taxpayer" and "person" in language very similar to that used in the GSTA. Similarly, in *Stolper v Dep't of Treasury*, 164 Mich App 407; 417 NW2d 520 (1987), this Court concluded that two taxpayers, a husband and wife residing in separate states, could be treated as a single taxpayer once they evinced an intention to act as one taxpayer by filing a joint federal income tax return. *Id.* at 415. That case examined the taxpayers under the definitions within the Michigan Income Tax Act, MCL 206.1 *et seq*. Like the SBTA, the Income Tax Act uses a definition of "person" similar to that contained in the GSTA.[9] Thus, this Court has held that under similar statutory language, two taxpayers may be treated as one taxpayer or "person" for the purpose of collecting the appropriate tax. In short, we have determined the tax liability of a "person," under various tax statutes, on the basis of the person's status, as in *Port Huron & Detroit R Co, supra*, or the person's intent to act as a single entity with another, as in *Stolper, supra*.

In this case, there is no question, in light of the assignments made by the dealers and plaintiff's discretion to finance each sale, that the dealers and plaintiff intended to act as one unit to effectuate the sales. As such, plaintiff and dealers were inextricably joined for the purpose of making retail sales.

Further, defendant's argument that plaintiff had no gross proceeds from which to calculate the bad debt is specious because plaintiff fully expected consumers who purchased motor vehicles from the dealers to make payments on the amount financed. Accordingly, the

---

[9] MCL 206.16 specifies that a " '[p]erson' includes any individual, firm, association, corporation, receiver, estate, trust or any other group or combination acting as a unit, and the plural as well as the singular number."

gross proceeds were what plaintiff expected, which was the sales price of the motor vehicles. Put plainly, the amount of bad debt plaintiff claims is calculated from identifiable sales proceeds. Nothing in the statute indicated that proceeds of sales in which financing occurred made the amount those sales represented incalculable.

Finally on this issue, our conclusion is consistent with the express purpose of the act, which was to collect "from all persons engaged in the business of making sales at retail . . . an annual tax for the privilege of engaging in that business . . . ."[10] In this case, plaintiff, acting with its affiliated dealers as a unit, was engaged in the business of selling automobiles at retail in Michigan. Therefore, our conclusion is consistent with the express purpose of the GSTA by assigning taxpayer status to plaintiff for the privilege of conducting business in Michigan.

### C. THE DEBT WAS RELATED TO SALES AT RETAIL

Having determined that plaintiff is a taxpayer under the GSTA, we next consider whether the bad debt alleged by plaintiff was related to sales at retail. To recover a tax overpayment based on bad debt, it was necessary that the bad debt be "related to a sale at retail."[11] Before 2004 PA 173[12] took effect, the GSTA defined "sale at retail" as "a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made in the ordinary course of the transferor's business and is made to the

---

[10] MCL 205.52, before amendment in 2004.

[11] MCL 205.54i(1), before amendment in 2004.

[12] After the amendment, the act states: " 'Sale at retail' or 'retail sale' means a sale, lease, or rental of tangible personal property for any purpose other than for resale, sublease, or subrent." MCL 205.51(1)(b).

transferee for consumption or use, or for any purpose other than for resale . . . ." MCL 205.51(1)(b).

The Legislature here did not use the words "transaction" and "transfer" interchangeably and intended them to have different meanings. The word "transfer" follows the operative wording "by which," itself preceded by "transaction." Stated in logical terms, a "transaction" causes a "transfer" to occur.

In this case, it is not disputed that the dealers "transferred" the motor vehicles to purchasers—in most cases literally handing them the keys and title in exchange for a security agreement. That moment, though, was clearly not the whole of the transaction, as defendant here appears to claim.

In *World Book, Inc v Dep't of Treasury*, 459 Mich 403; 590 NW2d 293 (1999), our Supreme Court examined whether a taxable event took place in Michigan, which would allow the state to impose the sales tax, or in Illinois, which would allow the state to impose the use tax. Our Supreme Court adopted the view of a "sale" as a "transaction," see *id.* at 411, and as "a discrete event facilitated by the laws and amenities of the place of sale . . . ." *Id.* at 410; quoting *Oklahoma Tax Comm v Jefferson Lines, Inc*, 514 US 175, 186; 115 S Ct 1331; 131 L Ed 2d 261 (1995) (superseded by statute on other grounds). Our Supreme Court's analysis pertained to the location of the sale at issue in that case; nonetheless, our Supreme Court's reasoning is consistent with the reasoning we employ here—that a "transaction" is a sale attended by "laws and amenities of the place of sale."

In this case, the amenity[13] for consumers was the availability of acceptable financing, which ultimately

---

[13] An "amenity" is a "feature that increases attractiveness or value, especially of a piece of real estate or a geographic location." *The American Heritage Dictionary of the English Language: Fourth Edition* (2000).

induced the sales at issue. The sales would not have taken place without the financing plaintiff provided—that the purchasers who defaulted applied to plaintiff for financing is enough proof of this fact; i.e., it would be unreasonable to conclude that purchasers who did not need financing applied for it simply to pay more for the same motor vehicle. Therefore, while plaintiff did not "transfer" the motor vehicles to consumers, it was integral to the "transaction," and, thus, the sale at retail. We determine, then, that plaintiff's debt from those sales was "related to" the sale at retail.

### III. CONCLUSION

For the reasons stated above, we conclude that plaintiff was a sales finance company that, along with its affiliated dealers, intended to act as one unit to make sales of motor vehicles; that plaintiff was engaged in business in Michigan; and, for those reasons, was a taxpayer under the GSTA. Further, we determine that plaintiff's bad debt was related to sales at retail because the sales themselves were "transactions by which transfer" of tangible property occurred. Plaintiff is entitled to recover from defendant sales tax overpayments under the bad-debt provision in effect at the time its claim accrued.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.