MENARD INC v DEPARTMENT OF TREASURY

SEARS ROEBUCK AND CO v STATE TREASURER

MENARD INC v STATE TREASURER

ART VAN FURNITURE-CONNER INC v STATE TREASURER

ART VAN FURNITURE INC v STATE TREASURER

Docket Nos. 310399, 311053, 311261, 311294, and 312168. Submitted May 7, 2013, at Lansing. Decided September 12, 2013, at 9:00 a.m. Leave to appeal sought.

Menard Inc., Sears Roebuck and Co., Art Van Furniture-Conner Inc., and Art Van Furniture Inc., filed separate actions in the Court of Claims against the Department of Treasury, State Treasurer, and the State of Michigan, seeking a refund under the bad debt deduction contained in MCL 205.54i of the General Sales Tax Act, MCL 205.51 *et seq* (GSTA). Plaintiffs, as retailers, entered into agreements with financing companies to issue private label credit cards. Plaintiffs remitted the sales tax to the treasury department when a customer made a purchase using the respective private label credit card; the financing company would subsequently reimburse the respective retailer for the purchase, as well as the applicable sales tax. The financing companies would write off as bad debt those amounts that customers did not pay on their credit card purchases. Plaintiffs sought a refund from the treasury department of the sales tax paid that was attributable to the bad debt. In Docket No. 310399, the court, Rosemarie E. Aquilina, J., granted summary disposition in favor of Menard. In Docket No. 311053, the court, Clinton Canady III, J., granted summary disposition in favor of Sears. In Docket No. 311261, the court, Joyce Draganchuk, J. granted summary disposition in favor of defendants. In Docket No. 311294, the court, Joyce A. Draganchuk, J., granted summary disposition in favor of defendants. In Docket No.312168, the court, William E. Collette, J., granted summary disposition in favor of Art Van Furniture, Inc. Defendants appealed in Docket Nos. 310399 and 312168, Sears appealed in Docket No. 311053, Menard Inc. appealed in Docket No. 311261, and Art Van Furniture-Conner, Inc. appealed in Docket No. 311294.

The Court of Appeals *held*:

1. The bad debt provision of the GSTA, MCL 205.54i(1)(a), allows a taxpayer to deduct bad debts from the gross proceeds used to calculate tax liability; it allows taxpayers to recover overpayment when expected sales proceeds are not received. To compute the tax owed each month under the GSTA, a taxpayer may deduct the amount of bad debts from his or her gross proceeds used for the computation of the tax. MCL 205.54i(2)

2. A private label credit card means any credit card or charge card that carries, refers to, or is branded with the name or logo of a vendor, that can only be used for purchases from the vendor, MCL 205.54i(1)(d), and the term lender includes the issuer of a private label credit card, MCL 205.54i(1)(b)(*iii*).

3. For purposes of the GSTA, a sales transaction may include a lender when the consumer utilizes a credit card to complete the sale, and the lender may hold the account receivable signifying a bad debt when the consumer fails to pay for the purchase in accordance with the terms of the private label credit card. Under MCL 205.54i(1)(e) and (3), after September 30, 2009, the term taxpayer includes the person who directly remitted the tax to the treasury department or the lender holding the account receivable. A lender and retailer is not a single unit for purposes of determining the taxpayer who is entitled to the bad debt deduction, but pursuant to MCL 205.54i(3), a taxpayer and lender may execute an election regarding which entity may claim the deduction.

4. In this case, plaintiff retailers were not entitled, under the bad debt provision, MCL 205.54i, to a refund for the sales tax paid on retail sales, the payment of which were never collected by the credit card financing companies. The plain language of MCL 205.54i states that when the debt is paid, the taxpayer remains liable for remittance of the tax to the extent of the amount paid. Consumers paid for goods by using private label credit cards and the credit card lenders in turn paid the plaintiff retailers in full for the goods and sales tax in accordance with their reimbursement agreements.

Reversed and remanded for entry of an order granting summary disposition in favor of defendants in Dockets Nos. 310399 and 312168. Affirmed in Docket Nos. 311053, 311261, and 311294.

GENERAL SALES TAX ACT — BAD DEBT PROVISION — DEFINITION OF TAXPAYER.

The bad debt provision, MCL 205.54i(1)(a), of the General Sales Tax Act, MCL 205.51 *et seq.*, allows a taxpayer to deduct bad debts from the gross proceeds used to calculate tax liability; for purposes of

the bad debt provision, after September 30, 2009, the term taxpayer includes the person who directly remitted the tax to the Department of Treasury or, the lender holding the account receivable when a purchase is made with a private label credit card; a lender and retailer is not a single unit for purposes of determining the taxpayer who is entitled to the bad debt deduction, but pursuant to MCL 205.54i(3), a taxpayer and lender may execute an election regarding which entity may claim the deduction.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Scott L. Damich*, Assistant Attorney General, for Department of Treasury, State Treasurer, and State of Michigan.

*Bodman PLC* (by *Joseph J. Shannon*) and *Akerman Senterfitt* (by *Peter O. Larsen, Michael J. Bowen*, and *David E. Otero*), for Menard, Inc.; Sears, Roebuck and Co., Art Van Furniture-Conner, Inc., and Art Van Furniture, Inc.

Before: FORT HOOD, P.J., and FITZGERALD and O'CONNELL, JJ.

PER CURIAM. In these consolidated appeals, the issue presented is whether plaintiffs, as retailers, are entitled to a refund pursuant to the bad debt provision, MCL 205.54i, of Michigan's General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, when the losses were incurred by a third-party financing company. We conclude that plaintiffs are not entitled to the refunds under the bad debt provision, and, in each action, summary disposition in favor of defendants is proper.[1]

---

[1] In Docket Nos. 310399 and 312168, summary disposition was granted in favor of plaintiffs, and we reverse and remand for entry of an order granting summary disposition in favor of defendants. In Docket Nos. 311053, 311261, and 311294, summary disposition was granted in favor of defendants, and we affirm those decisions.

I. BASIC FACTS AND PROCEDURAL HISTORY

In these cases, plaintiffs, as retailers, entered into agreements with financing companies to issue private label credit cards (PLCC).[2] When a customer made a purchase with a PLCC, the retailer remitted the sales tax to the treasury department. In accordance with the terms of the agreements between the retailer and the financing companies, the retailer received reimbursement for the purchase[3] and the applicable sales tax. When the customers failed to pay the amounts owed on their PLCC, the financing company wrote off the bad debts. However, plaintiffs, as the retailers, also sought a refund from the treasury department of the sales tax attributable to the bad debt amount. Defendants asserted that plaintiffs were not entitled to a refund of the sales tax because they did not fulfill the requirements of MCL 205.54i(1)(a). Plaintiffs argued that their actions, coupled with the actions of the lender, qualified for the bad debt deduction of MCL 205.54i(1)(a) pursuant to the decision in *DaimlerChrysler Servs North America LLC v Dep't of Treasury*, 271 Mich App 625; 723 NW2d 569 (2006), superseded by statute as recognized in *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 374; 781 NW2d 310 (2009).[4] Pursuant to the plain language of MCL 205.54i, as amended by 2007 PA 105, and the rules governing taxation, we hold that plaintiffs are not entitled to the refund.

---

[2] In Docket No. 311053, plaintiff, Sears Roebuck & Co, initially operated a Sears-label credit card program administered by Citibank, but ultimately sold its accounts to Citibank.

[3] The agreements may have provided for discounted amounts and not full reimbursement for the total amount of the sale.

[4] Plaintiffs also rely on *Home Depot USA, Inc v State of Michigan*, unpublished opinion per curiam of the Court of Appeals, issued May 24, 2012 (Docket No. 301341). However, the *Home Depot* decision is unpublished, not binding precedent, and we decline plaintiffs' invitation to follow it. MCR 7.215(C)(1); *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

## II. RULES REGARDING STATUTORY CONSTRUCTION

A trial court's ruling regarding a motion for summary disposition presents a question of law subject to review de novo. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). The interpretation and application of a statute presents a question of law that the appellate court reviews de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). The judiciary's objective when interpreting a statute is to discern and give effect to the intent of the Legislature. *Id.* Once the intent of the Legislature is discovered, it must prevail regardless of any rule of statutory construction to the contrary. *In re Certified Question*, 433 Mich 710, 722; 449 NW2d 660 (1989). First, the court examines the most reliable evidence of the Legislature's intent, the language of the statute itself. *Whitman*, 493 Mich at 311. "When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012). Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory. *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Whitman*, 493 Mich at 311. "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). The courts may not read into the statute a requirement that

the Legislature has seen fit to omit. *In re Hurd-Marvin Drain*, 331 Mich 504, 509; 50 NW2d 143 (1951); *Mich Basic Prop Ins Ass'n v Office of Fin & Ins Regulation*, 288 Mich App 552, 560; 808 NW2d 456 (2010). "When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose." *Mich Basic Prop Ins Ass'n*, 288 Mich App at 560 (quotation marks and citation omitted). Statutes that address the same subject matter or share a common purpose are *in pari materia* and must be read collectively as one law, even when there is no reference to one another. *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200, 212; 828 NW2d 459 (2012). "The word 'or' generally refers to a choice or alternative between two or more things." *Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 50; 575 NW2d 79 (1997).

### III. RULES REGARDING TAXATION, DEDUCTION, AND EXEMPTION

> State legislatures have great discretionary latitude in formulating taxes. The legislature must determine all question of State necessity, discretion or policy in ordering a tax and in apportioning it. And the judicial tribunals of the State have no concern with the policy of State taxation determined by the legislature. [*In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 308; 806 NW2d 683 (2011) (quotation marks and citations omitted).]

When interpreting a tax statute, the power to tax must be expressly stated, not inferred. *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994); *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 136; 761 NW2d 470 (2008). "Tax laws will not be extended in scope by implication or

forced construction." *Ameritech Publishing, Inc*, 281 Mich App at 136. "[A]mbiguities in the language of a tax statute are to be resolved in favor of the taxpayer." *Mich Bell Tel Co*, 445 Mich at 477. The appellate court "may not vary the clear and unequivocal meaning of the words used in the statute and determine tax matters solely on the grounds of unwisdom or of public policy." *Ready-Power Co v City of Dearborn*, 336 Mich 519, 525; 58 NW2d 904 (1953).

A "tax deduction" is a "subtraction from gross income in arriving at taxable income." *In re Request for Advisory Opinion*, 490 Mich at 333 n 40 (quotation marks and citation omitted). A "tax exemption" is characterized as "[i]mmunity from the obligation of paying taxes in whole or in part." *Id*. Although the two principles differ, the net effect is the same because both reduce gross income when computing taxable income. *Id*. (quotation marks and citation omitted). Taxation is the rule, and exemptions are the exception. *Ladies Literary Club v City of Grand Rapids*, 409 Mich 748, 754; 298 NW2d 422 (1980). Consequently, statutory exemptions are strictly construed against the taxpayer. *ANR Pipeline Co v Dep't of Treasury*, 266 Mich App 190, 201; 699 NW2d 707 (2005). Similarly, a deduction presents a matter of legislative grace, and a clear provision must be identified to allow for a particular deduction. *Id*. A deduction must be clearly expressed because the "propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence." *Perry Drug Stores, Inc v Dep't of Treasury*, 229 Mich App 453, 461; 582 NW2d 533 (1998) (citation and quotation marks omitted). The burden of proving a deduction is on the party seeking the deduction. See *Southfield Western, Inc v City of Southfield*, 146 Mich App 585, 590; 382 NW2d 187 (1985).

In practice, the rules of construction governing exemptions may be applied to the rules addressing deductions. See *Detroit Edison Co v Dep't of Revenue*, 320 Mich 506, 514-515; 31 NW2d 809 (1948). In *GMAC LLC*, 286 Mich App at 374-375, this Court set forth the following rules regarding tax exemptions:

> Moreover, "[a]n exemption will not be inferred from language of a statute if the words admit of any other reasonable construction." Tax exemptions are disfavored, and the burden of proving an entitlement to an exemption is on the party claiming the right to the exemption. Tax exemptions are in derogation of the principle that all shall bear a proportionate share of the tax burden, and therefore, a tax exemption shall be strictly construed. [Citations omitted.]

With regard to the clarity of the language required to claim an exemption and the burden of proof, our Supreme Court has held:

> "An intention on the part of the legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it

depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute, the favor would be extended beyond what was meant." [*City of Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), quoting 2 Cooley, Taxation (4th ed), § 672, p 1403.]

IV. MCL 205.54i AND APPLICATION TO THE FACTS

Before its 2007 amendment, the plain language of the bad debt statute, MCL 205.54i, provided, in relevant part:

(1) As used in this section, "bad debt" means any portion of a debt that is related to a sale at retail taxable under this act for which gross proceeds are not otherwise deductible or excludable and that is eligible to be claimed, or could be eligible to be claimed if the taxpayer kept accounts on an accrual basis, as a deduction pursuant to section 166 of the internal revenue code, 26 USC 166. A bad debt shall not include any finance charge, interest, or sales tax on the purchase price, uncollectible amounts on property that remains in the possession of the taxpayer until the full purchase price is paid, expenses incurred in attempting to collect any account receivable or any portion of the debt recovered, any accounts receivable that have been sold to and remain in the possession of a third party for collection, and repossessed property.

(2) In computing the amount of tax levied under this act for any month, a taxpayer may deduct the amount of bad debts from his or her gross proceeds used for the computation of the tax. The amount of gross proceeds deducted must be charged off as uncollectible on the books and records of the taxpayer at the time the debt becomes worthless and deducted on the return for the period during which the bad debt is written off as uncollectible in the

claimant's books and records and must be eligible to be deducted for federal income tax purposes. For purposes of this section, a claimant who is not required to file a federal income tax return may deduct a bad debt on a return filed for the period in which the bad debt becomes worthless and is written off as uncollectible in the claimant's books and records and would be eligible for a bad debt deduction for federal income tax purposes if the claimant was required to file a federal income tax return. If a consumer or other person pays all or part of a bad debt with respect to which a taxpayer claimed a deduction under this section, the taxpayer is liable for the amount of taxes deducted in connection with that portion of the debt for which payment is received and shall remit these taxes in his or her next payment to the department. Any payments made on a bad debt shall be applied proportionally first to the taxable price of the property and the tax on the property and second to any interest, service, or other charge.

(3) Any claim for a bad debt deduction under this section shall be supported by that evidence required by the department. The department shall review any change in the rate of taxation applicable to any taxable sales by a taxpayer claiming a deduction pursuant to this section and shall ensure that the deduction on any bad debt does not result in the taxpayer claiming the deduction recovering any more or less than the taxes imposed on the sale that constitutes the bad debt.

MCL 205.54i, as amended by 2007 PA 105, placed limitations on who qualified as a "taxpayer" for purposes of the bad debt provision. "The amendment to MCL 205.54i was approved and filed on October 1, 2007, given immediate effect, and expressly provided for retroactive application." *GMAC LLC*, 286 Mich App at 369.

MCL 205.54i, as amended by 2007 PA 105, states:

(1) As used in this section:

(a) "Bad debt" means any portion of a debt that is related to a sale at retail taxable under this act for which gross proceeds are not otherwise deductible or excludable

and that is eligible to be claimed, or could be eligible to be claimed if the taxpayer kept accounts on an accrual basis, as a deduction pursuant to section 166 of the internal revenue code, 26 USC 166. A bad debt shall not include any finance charge, interest, or sales tax on the purchase price, uncollectible amounts on property that remains in the possession of the taxpayer until the full purchase price is paid, expenses incurred in attempting to collect any account receivable or any portion of the debt recovered, any accounts receivable that have been sold to and remain in the possession of a third party for collection, and repossessed property.

(b) Except as provided in subdivision (c), "lender" includes any of the following:

(*i*) Any person who holds or has held an account receivable which that person purchased directly from a taxpayer who reported the tax.

(*ii*) Any person who holds or has held an account receivable pursuant to that person's contract directly with the taxpayer who reported the tax.

(*iii*) The issuer of the private label credit card.

(c) "Lender" does not include the issuer of a credit card or instrument that can be used to make purchases from a person other than the vendor whose name or logo appears on the card or instrument or that vendor's affiliates.

(d) "Private label credit card" means any charge card, credit card, or other instrument serving a similar purpose that carries, refers to, or is branded with the name or logo of a vendor and that can only be used for purchases from the vendor.

(e) "Taxpayer" means a person that has remitted sales tax directly to the department on the specific sales at retail transaction for which the bad debt is recognized for federal income tax purposes or, after September 30, 2009, a lender holding the account receivable for which the bad debt is recognized, or would be recognized if the claimant were a corporation, for federal income tax purposes.

(2) In computing the amount of tax levied under this act for any month, a taxpayer may deduct the amount of bad debts from his or her gross proceeds used for the computation of the tax. The amount of gross proceeds deducted must be charged off as uncollectible on the books and records of the taxpayer at the time the debt becomes worthless and deducted on the return for the period during which the bad debt is written off as uncollectible in the claimant's books and records and must be eligible to be deducted for federal income tax purposes. For purposes of this section, a claimant who is not required to file a federal income tax return may deduct a bad debt on a return filed for the period in which the bad debt becomes worthless and is written off as uncollectible in the claimant's books and records and would be eligible for a bad debt deduction for federal income tax purposes if the claimant was required to file a federal income tax return. If a consumer or other person pays all or part of a bad debt with respect to which a taxpayer claimed a deduction under this section, the taxpayer is liable for the amount of taxes deducted in connection with that portion of the debt for which payment is received and shall remit these taxes in his or her next payment to the department. Any payments made on a bad debt shall be applied proportionally first to the taxable price of the property and the tax on the property and second to any interest, service, or other charge.

(3) After September 30, 2009, if a taxpayer who reported the tax and a lender execute and maintain a written election designating which party may claim the deduction, a claimant is entitled to a deduction or refund of the tax related to a sale at retail that was previously reported and paid if all of the following conditions are met:

(a) No deduction or refund was previously claimed or allowed on any portion of the account receivable.

(b) The account receivable has been found worthless and written off by the taxpayer that made the sale or the lender on or after September 30, 2009.

(4) Any claim for a bad debt deduction under this section shall be supported by that evidence required by the department. The department shall review any change in the rate of taxation applicable to any taxable sales by a taxpayer claiming a deduction pursuant to this section and shall ensure that the deduction on any bad debt does not result in the taxpayer claiming the deduction recovering any more or less than the taxes imposed on the sale that constitutes the bad debt.

Plaintiffs direct this panel to the decisions of *Daimler-Chrysler* and *GMAC LLC*, and request that we interpret those decisions to conclude that plaintiff retailers, coupled with the financing companies constituted "taxpayers" for purposes of obtaining the bad debt refund in accordance with MCL 205.54i(1)(a).[5] The appropriate inquiry is not to construe this factual scenario within the confines of those appellate decisions. Rather, our role is to discern the legislative intent from the plain language of the amended statute, *Whitman*, 493 Mich at 311, enforce the statute as written if the language is clear and unambiguous, *id.*, or to construe the statute as necessary to give effect to every word in the statute and avoid a construction that would render part of the statute surplusage or nugatory, *Johnson*, 492 Mich at 177. Because a tax exemption or deduction is sought by plaintiffs, they have the burden of proof, *Detroit*, 322 Mich at 148, the statute is strictly construed against them as the taxpayer, *GMAC LLC*, 286 Mich at 375, and the exemption must be expressed in clear and unambiguous terms, *Detroit*, 322 Mich at 149. In light of the rules governing statutory construction, tax exemption

---

[5] Specifically, plaintiffs contend that *DaimlerChrysler*, which held that groups may act as a unit for purposes of determining the "taxpayer," remains viable. However, the plain language of MCL 205.54i, as amended by 2007 PA 105, indicates that the retailer, as the taxpayer, and the lender, are treated differently. See MCL 205.54i(1)(e) and (3). The statutory amendment superseded the *DaimlerChrysler* decision.

and deduction, and the burden of proof, we conclude that plaintiffs are not entitled to a refund under the bad debt provision.

Pursuant to MCL 205.52(1) of the GSTA, business persons engaged in making sales at retail must pay an annual tax for the privilege of engaging in business in this state. *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 407; 590 NW2d 293 (1999). The sales tax is imposed directly on the seller, but the seller may transfer it directly to the consumer at the point of sale. *Id.* at 408. The bad debt provision of the GSTA allows "bad debts to be deducted from the gross proceeds used to calculate tax liability." *Id.* at 406. Specifically, the bad debt provision "allows taxpayers to recover overpayment when expected sales proceeds are not received." *DaimlerChrysler*, 271 Mich App at 626.

A review of the plain language of MCL 205.54i, as amended by 2007 PA 105, and applied retroactively, reveals that the Legislature recognized that sales transactions did not merely involve a consumer and a retailer. Rather, the Legislature acknowledged that sales transactions may include a lender when the consumer utilizes a credit card to complete the sale, and the lender may hold the account receivable signifying a bad debt when the consumer fails to pay for the purchase in accordance with the terms of the private label credit card. MCL 205.54i(1)(b) and (e). Consequently, the availability of the deduction has been limited, and a taxpayer and lender may execute an election regarding the entity that may claim the deduction subject to completion of the necessary conditions. MCL 205.54i(3) ("[A] taxpayer who reported the tax and a lender [may] execute and maintain a written election designating *which party* may claim the deduction[.]"). Furthermore, after September 30, 2009, the term "taxpayer" may

include the person that directly remitted the tax to the treasury department *or* the lender holding the account receivable for which the bad debt is recognized. "The word 'or' generally refers to a choice or alternative between two or more things." *Auto-Owners Ins Co*, 227 Mich App at 50. The use of the alternative term "or" reflects the legislative intent that the "taxpayer" as the remitter of the tax and the "lender" are two different entities for purposes of allowing a taxpayer to obtain the refund. *Id.* Plaintiffs did not meet their burden of proving a clearly stated exemption or deduction.

Irrespective of the Legislature's recognition that the sales transaction may involve third party lenders, both the amended and the prior versions of MCL 205.54i(2) confined the deduction. Specifically, MCL 205.54i(2), and MCL 205.54i(2), as amended by 2007 PA 105, both contain the same language, in relevant part: "If a consumer *or other person pays all or part of a debt with respect to which a taxpayer claimed a deduction* under this section, the taxpayer is liable for the amount of taxes deducted in connection with that portion of the debt for which payment is received and shall remit these taxes in his or her next payment to the department." (emphasis added). In the factual scenario where the taxpayer is the retailer who remits the tax to the treasury department, the retailers are paid by the financing company. Thus, the plain language of the bad debt provision acknowledges that when the debt is paid, the taxpayer remains liable for remittance of the tax to the extent of the amount paid. In the present case, consumers obtained the funds to pay for the goods through credit card lenders, and plaintiff retailers were paid in full in accordance with the reimbursement agreements for the goods, including the tax. Although MCL 205.54i does not define "person," the GSTA, MCL 205.51(1)(a) defines "person" to include "municipal or

private corporation whether organized for profit or not, company . . . ." Therefore, the payment of the bad debt by a third party lender, an organized corporation, does not entitle retailers to a bad debt refund. Accordingly, plaintiffs are not entitled to the requested refunds.

Reversed and remanded for entry of an order granting summary disposition in favor of defendants in Docket Nos. 310399 and 312168, and affirmed in Docket Nos. 311053, 311261, and 311294. We do not retain jurisdiction.

FORT HOOD, P.J., and FITZGERALD and O'CONNELL, JJ., concurred.