*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PRIORITY HEALTH and PRIORITY HEALTH INSURANCE COMPANY,

UNPUBLISHED
April 14, 2022

Petitioners-Appellees,

v

No. 356769
Tax Tribunal
LC No. 16-000784-TT

DEPARTMENT OF TREASURY,

Respondent-Appellant.

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals by right the final opinion and judgment of the Tax Tribunal cancelling respondent's assessment of taxes owed by petitioners—Priority Health and Priority Health Insurance Company (collectively, "Priority")—under the Health Insurance Claims Assessment Act (HICAA), MCL 550.1731 *et seq.*[1] Respondent additionally challenges the tribunal's order denying respondent's motion for reconsideration. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND

Petitioners are a nonprofit Michigan health-maintenance organization and its subsidiary that provide insurance coverage for medical, prescription drug, and other healthcare services to their members. This case deals with petitioners' prescription-drug coverage. In 2012, petitioners contracted with third-party pharmacy benefit managers (PBMs) to administer their prescription-drug benefits and manage rebates on prescription drugs. Petitioners' rebate PBMs were Express Scripts (ESI), ICore, and CDMI, with ESI administering the majority of petitioners' pharmaceutical rebates.

---

[1] The HICAA was repealed pursuant to 2018 PA 173, effective October 1, 2018.

The since-repealed HICAA imposed a 1% tax on all "paid claims" made by health insurance providers in Michigan. MCL 550.1733(1). The HICAA defined "paid claims," in relevant part, as "actual payments, *net of recoveries*, made to a health and medical services provider or reimbursed to an individual by a carrier, third party administrator, or excess loss or stop loss carrier." MCL 550.1732(s) (emphasis added). When filing their HICAA returns with respondent, petitioners reported prescription-drug rebates as "recoveries" that reduced their "paid claims" tax base.

Respondent later audited petitioners reported HICAA tax liability for 2012, and respondent's auditor concluded that petitioners' "paid claims" tax base was incorrect because petitioners' pharmacy rebates did not constitute "recoveries." Respondent accordingly assessed more than $150,000 in additional tax liability against petitioners. Following an informal conference, the hearing referee recommended that respondent cancel the assessments, but respondent rejected this recommendation and issued final assessments pursuant to its auditor's findings.

## B. INITIAL TRIBUNAL PROCEEDINGS AND APPEAL

Petitioners appealed the final assessment to the Tax Tribunal. Both parties filed motions for summary disposition, and the tribunal initially denied both motions. In its order denying summary disposition, the tribunal made a number of legal determinations relevant to this appeal. The tribunal held that "recoveries" under MCL 550.1732(s) are tax deductions because they are "subtracted from the actual payment" and "reduce the value upon which taxes will be ultimately calculated." Thus, petitioners had the burden of establishing their "recoveries." See *Menard, Inc v Dep't of Treasury*, 302 Mich App 467, 473; 838 NW2d 736 (2013) (explaining that the party seeking a deduction has the burden of establishing that it was entitled to the deduction). Next, the tribunal defined a "recovery" in the context of MCL 550.1732(s) as the "regaining of a portion of a claim already paid." In so doing, the tribunal rejected respondent's interpretation of MCL 550.1732(s) that would have required any rebate to be "tied to a reduction in the claim payment to the provider" in order to constitute a "recovery," reasoning that respondent's definition was "reading an additional requirement into the statute that is simply not supported."

Respondent moved for reconsideration, and a different tribunal judge granted the motion, concluding that the first judge had applied the wrong standard for reviewing a motion for summary disposition. The second judge did not disturb the tribunal's conclusions regarding the interpretation of MCL 550.1732(s), but rather believed that respondent was entitled to summary disposition because petitioners' evidence failed to create a question of fact whether they were entitled to the claimed deduction.

Petitioners appealed the tribunal's order granting summary disposition, and this Court reversed, concluding that, when viewed in the light most favorable to petitioners, the evidence created a material factual dispute. *Priority Health v Dep't of Treasury*, unpublished per curiam opinion of the Court of Appeals, issued October 30, 2018 (Docket Nos. 341120 and 341199), pp 6-7. The panel explained that "the accounting required in this case to determine the precise dollar amount that petitioner can set off against its total paid claims for HICAA taxation purposes is akin to the computation of damages in a regular civil court case, which is usually held to be an issue of

fact." *Id*. at 7. Accordingly, the case was remanded to the tribunal to determine "[t]he amount of tax that petitioner has to pay under HICAA." *Id*. at 7-8.

## C. TRIBUNAL HEARING ON REMAND

On remand, the Tax Tribunal held a two-day hearing. Petitioners called three Priority employees as witnesses: Nicholas Gates, vice president of finance; Deborah Avery, a lead financial analyst; and Cindy Brink, director of financial reporting and analysis. Gates testified that in 2012, Priority received a monthly check from ESI with the rebates due to Priority. Gates used Priority's claims data to estimate the percentage of pharmacy claims that were subject to the HICAA tax and applied that percentage to the rebate amount to estimate the total rebates that Priority reported as allowable recoveries. Gates testified that Priority had since received more detailed data on its rebates from ESI that allowed it to provide a more accurate calculation of allowable recoveries.

Avery testified that she took the new rebate data received from Priority's rebate PBMs and used four data points to match individual rebates to paid pharmacy claims in Priority's database. Avery compared the fill date, National Drug Category (NDC), pharmacy ID, and prescription ID to create spreadsheets linking rebate detail with Priority's claims data. Avery testified that after her analysis, there were 850 claims that remained unmatched to any pharmaceutical rebate.

Brink testified that she used the spreadsheets generated by Avery to create a document that calculated the total rebate amount that impacted Priority's 2012 HICAA tax. Brink testified that she filtered the data compiled by Avery in order to exclude claims that were not subject to the HICAA. Brink did not include any rebates for the 850 unmatched claims in her calculation.

Respondent called its auditor to testify. The auditor stated that the reason he disallowed pharmacy rebates as allowable recoveries on Priority's 2012 HICAA tax return was because of an online Frequently Asked Questions (FAQ) document created by respondent.[2]

Following the hearing, the tribunal issued a written opinion cancelling the final assessments issued by respondent. The tribunal determined that Avery's testimony about matching data points from the rebate data to Priority's claims data showed that Priority "could isolate each rebate matched to an individual pharmacy claim." The tribunal found Avery's and Brink's testimony

---

[2] The relevant FAQ provided:

> Q126. Can rebates received by a Pharmacy Benefit Manager from drug companies be netted as "recoveries" against the PBMs "paid claims" for purposes of the Health Insurance Claims Assessment (HICA)?
>
> A. In most cases, no. "Recoveries" includes any amounts received by the payer that are applied against a claim, as long as the recovered amount affects the amount of the actual payment made to the provider. Rebates received by PBMs from drug companies do not typically affect the amount of the payment made to the medical services provider, which in this case is the pharmacy dispensing the drug.

about Priority's methods of linking pharmaceutical rebates to claims to be persuasive. The tribunal concluded that, overall, petitioners "sufficiently supported their calculations of pharmaceutical rebate recoveries." Respondent moved for reconsideration, which a different tribunal judge denied. The tribunal rejected numerous arguments raised by respondent and reaffirmed that the evidence presented by petitioners demonstrated that "each rebate was linked to an individual paid pharmacy claim." This appeal followed.

## II. ANALYSIS

Respondent argues that the tribunal erred by finding that petitioners sufficiently established that their pharmacy rebates were allowable recoveries and consequently cancelling respondent's assessments of additional HICAA tax liability. We disagree.

If fraud is not claimed, this Court reviews a decision by the Tax Tribunal for misapplication of the law or adoption of a wrong principle. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). The tribunal's factual findings are conclusive if they are "supported by competent, material, and substantial evidence on the whole record." *Id*. (quotation marks and citations omitted). See also Const. 1963, art. 6, § 28.

The HICAA imposed a 1% tax on all "paid claims" made by health insurance providers in Michigan. MCL 550.1733(1). "Paid claims" is defined, in relevant part, as "actual payments, *net of recoveries*, made to a health and medical services provider . . . by a carrier, third party administrator, or excess loss or stop loss carrier." MCL 550.1732(s) (emphasis added). The parties agree that, on the basis of this language, the HICAA authorizes a reduction from a taxpayer's "paid claims" tax base for any "recoveries" from actual payments.[3]

Respondent argues that the tribunal erred by determining that petitioners matched pharmacy rebates to paid claims such that they constituted "recoveries" pursuant to MCL 550.1732(s). According to respondent, the tribunal's findings were unsupported because Avery testified that she "did not match up the rebate information against a claim."

Respondent raised this same issue in its motion for reconsideration, and we agree with the tribunal that respondent's argument lacks merit because it takes Avery's testimony out of context. Avery testified that she did not match specific *dollar amounts* for rebates and claims, but explained that she linked rebates to claims by matching four fields of data—fill date, NDC, pharmacy ID, and prescription ID. Avery also testified that each individual claim in Priority's database had a transaction ID number. The tribunal explained in its conclusions of law how Avery linked claims to rebates using the four data points and the unique transaction ID number:

> When matching all four fields with corresponding [Priority] data, there were no duplicates, and the database never returned more than one claim. By comparing these fields, Ms. Avery was able to determine the transaction ID for each from [Priority's] claims data. Each transaction ID identified an individual pharmacy

---

[3] This was how the tribunal interpreted MCL 550.1732(s) in its opinion prior to the first appeal, and the parties agree that they are bound by the tribunal's interpretation in that opinion.

claim so Petitioners could isolate each rebate matched to an individual pharmacy *claim*. Using this method, Ms. Avery was able to match all but 850 rebates to claims.

Further, Brink testified that using Avery's analysis of the data, she created a document calculating the amount of prescription drug rebates that impacted Priority's HICAA tax for 2012. Brink explained how she filtered out claims from Avery's spreadsheets that were not subject to the HICAA tax. Brink also explained that, while petitioners lacked the necessary data to link individual rebates with claims in 2012, petitioners received full data sets from the PBMs in 2019 that allowed them to link individual rebates with individual paid claims. Considering Avery's and Brink's testimony together, there was competent, material, and substantial evidence to support the tribunal's finding that petitioners linked their 2012 pharmacy rebates to specific paid claims.

Respondent also argues that petitioners' evidence was deficient because it relied on methods such as "digit manipulation" of prescription IDs and "spreadsheet filtering" to calculate the amount of prescription drug rebates eligible for deduction. We disagree because petitioners presented substantial evidence to show that its data analysis procedures were reliable methods to match specific pharmacy rebates with paid claims. Avery testified that she removed certain leading zeros and other digits from the prescription ID in order to reconcile differences between how the PBMs and Priority stored their data and to obtain matches. Avery explained that this method was reliable because the prescription ID was only one of four data points used to match rebates and claims.[4] The tribunal found Avery's testimony regarding her rationale for removing leading zeros to be persuasive, and that determination is entitled to deference. See *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 636; 806 NW2d 342 (2011).

Respondent further contends that the process that Brink used to filter the spreadsheets generated by Avery to isolate the claims that were subject to the HICAA tax was unreliable because Brink did not review underlying documentation. We disagree. Brink testified that she believed the data provided by the PBMs was reliable because public accounting firms had approvingly reviewed the accounting procedures used by the PBMs. Additionally, petitioners presented affidavits from the records custodians for the PBMs attesting to the accuracy of the data. Brink also explained that she did not need to verify the sources for Priority's claims data because others in the organization validated that information on a regular basis. Even the Department's auditor stated in his audit report of findings that he was "satisfied that [Priority] ha[d] established proper procedures to account for the HICA [sic] fee." Accordingly, the tribunal did not err by accepting petitioners' methods of calculating its total pharmacy rebates eligible for deduction.

Respondent's remaining arguments are similarly meritless. Respondent contends that because petitioners did not maintain individual claim accounts, any pharmacy rebates could not possibly reduce paid claims. Respondent erroneously relies upon an interpretation of "recoveries" in MCL 550.1732(s) that the tribunal previously rejected. The tribunal concluded that in order to

---

[4] Although Avery acknowledged that she may have omitted legitimate rebates by removing all leading zeros, that result only would have harmed *petitioners* because it would have reduced the total rebate amount that they could deduct as "recoveries."

qualify as a recovery, a pharmacy rebate need not be directly "tied to a reduction in the claim payment to the provider." Rather, petitioners needed to present evidence to show that their paid claims could be linked to specific prescription drug rebates. Thus, petitioners did not need to establish that the pharmacy rebates received by the PBMs actually reduced a specific paid claim in Priority's accounting records. As already discussed, petitioners satisfied their burden to show that they linked individual paid claims to specific rebates. Therefore, as the tribunal noted in its order denying respondent's motion for reconsideration, "the fact that the rebates were 'dumped' into an aggregate 'rebate' account is irrelevant."

Respondent also incorrectly asserts that the tribunal made an error of law by shifting the burden of proof onto respondent. Respondent is correct to the extent that it asserts that petitioners, as the parties seeking a deduction on its HICAA tax, had the burden to establish that they were entitled to the deduction. See *Menard*, 302 Mich App at 473. However, respondent cites an isolated portion of one sentence from the tribunal's opinion that does not establish that the tribunal shifted the burden of proof to respondent. Rather, throughout the tribunal's conclusions of law, the tribunal referenced testimony and other evidence presented by petitioners at the hearing that satisfied petitioners' burden to support their calculation of pharmacy rebates as "recoveries." Accordingly, the record as a whole demonstrates that the tribunal properly placed the burden of proof on petitioners.

Affirmed.


/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien