WORLD BOOK, INC v DEPARTMENT OF TREASURY

Docket No. 109841. Argued January 21, 1999 (Calendar No. 6). Decided March 30, 1999.

World Book, Inc., brought an action in the Court of Claims, challenging an assessment by the Department of Treasury for taxes owed under the Use Tax Act. The court, Thomas L. Brown, J., found for the plaintiff, holding that its sales to Michigan customers came within the General Sales Tax Act and thus that it was entitled to deduct bad debts from its gross proceeds. The Court of Appeals, MACKENZIE, P.J., and JANSEN and T. R. THOMAS, JJ., reversed in an opinion per curiam, concluding that the appropriate test under the General Sales Tax Act for determining whether a retail sale takes place in Michigan is whether the sale was consummated within the state. After deciding that the transactions in this case took place in Illinois, it held that the Use Tax Act applies to the plaintiff's sales. 222 Mich App 203 (1997) (Docket No. 184804). The plaintiff appeals.

In an opinion by Justice KELLY, joined by Chief Justice WEAVER, and Justices CAVANAGH, TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

The test for deciding whether a sales transaction is subject to a sales, and not a use, tax is whether it was consummated within the state. Because the plaintiff's sales to its Michigan customers were not consummated in Michigan, but rather in Illinois, they were properly subject to the provisions of the Use Tax Act, not the General Sales Tax Act. However, the defendant improperly held the plaintiff liable for the uncollected use taxes because the plaintiff was without fault in failing to collect the taxes from its Michigan consumers.

1. The provisions of the General Sales Tax Act and the Use Tax Act are complementary. As a general rule, property for which a consumer has already paid a use tax is not subject to the provisions of the General Sales Tax Act. Similarly, the Use Tax Act does not apply to property sold in Michigan on which Michigan sales tax has already been paid, if the tax was due and paid on the retail sale to a consumer. Also, use tax is not owed on goods already subjected to certain other sales or use taxes in another state.

2. The sales tax is a privilege tax, imposed directly on the seller, which the seller may pass on to the purchaser and collect at the point of sale. The use tax is an excise tax, and the ultimate liability is placed on the consumer. Sellers with sufficient connection to Michigan are required to collect the use tax and remit it to the Department of Treasury. The General Sales Tax Act includes a provision allowing bad debts to be deducted from the gross proceeds used to calculate sales tax liability; the Use Tax Act does not.

3. A seller's liability under the Use Tax Act arises only when there is some fault on the seller's part in failing to collect the taxes from its customers. A seller is not required to become its customers' use-tax payment guarantor. To so require, in effect, would convert the use tax to a sales tax. In this case, the defendant required the plaintiff to pay use taxes on its uncompleted transactions, despite the fact that the plaintiff never received payment for the goods sold. Further, the defendant provided no evidence that the plaintiff acted in a commercially unreasonable manner in trying to collect the use tax from its Michigan consumers. The plaintiff is entitled to a refund of the tax paid.

Justice BRICKLEY concurred in the result only.

Reversed.

*Honigman, Miller, Schwartz & Cohn* (by *Patrick R. Van Tiflin* and *John S. Kane*) for appellant.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for defendant-appellee.

Amicus Curiae:

*Weisman, Trogan, Young & Schloss, P.C.* (by *Anthony V. Trogan*); *Brann & Isaacson, L.L.P.*, of counsel (by *George S. Isaacson, Martin I. Eisenstein*, and *Roy T. Pierce*), for Direct Marketing Association, Inc.

KELLY, J. In this tax dispute, plaintiff World Book, Inc., appeals from a Court of Appeals decision in favor of defendant Revenue Division of the Depart-

ment of Treasury, state of Michigan. We are asked to decide two issues. The first is whether plaintiff's sales transactions involving Michigan customers are properly taxable under Michigan's Use Tax Act[1] as opposed to Michigan's General Sales Tax Act.[2] The second is whether, assuming the Use Tax Act applies, the absence of a bad debt deduction in the act results in a violation of the Commerce Clause of the United States Constitution. US Const, art I, § 8, cl 3.

We hold that plaintiff's transactions are properly taxable under the Use Tax Act. However, because we find that imposition of the plaintiff's liability for the taxes was improper in this case, we do not address the question of a Commerce Clause violation. Instead, we hold that plaintiff is not required to pay its customers' use taxes where World Book used reasonable business care in trying to collect them.

I. FACTS

Plaintiff is a Delaware corporation with its principal office in Illinois. It maintains no permanent facilities in Michigan. Instead, it markets encyclopedias and other educational material to its customers through the use of salespersons who make door-to-door sales calls in Michigan. The salespersons take orders for the encyclopedias and accept deposits from customers. Orders are then sent to plaintiff's headquarters in Illinois and, if approved, shipped from the inventory in Illinois to the customer by common carrier.

---

[1] MCL 205.91 *et seq.*;  MSA 7.555(1) *et seq.*

[2] MCL 205.51 *et seq.*;  MSA 7.521 *et seq.*

Both parties acknowledge that plaintiff's transactions involving Michigan customers are subject either to Michigan's Use Tax Act or General Sales Tax Act. Normally this would end the matter, as the rates under both taxing schemes are the same[3] and the provisions of each statute are complementary and supplementary. *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 153; 549 NW2d 837 (1996). However, a distinction crucial to the instant case exists: The General Sales Tax Act includes a provision allowing bad debts to be deducted from the gross proceeds used to calculate sales tax liability. MCL 205.54i; MSA 7.525(9).[4] The Use Tax Act does not contain such a provision.

Plaintiff filed tax returns taking the bad debt deduction for 1988-91, the pertinent years. The defendant, ruling that plaintiff's transactions involving Michigan customers are taxable under the Use Tax Act, issued an assessment notice that additional payment was required. Plaintiff paid the tax under protest and filed an action in the Court of Claims. The Court of Claims agreed with plaintiff's contention that its sales to Michigan customers come within the Gen-

---

[3] The Sales Tax Act rate is currently six percent of the gross proceeds of a business. The rate during the years in question was four percent under both acts.

[4] MCL 205.54i(2); MSA 7.525(9)(2) provides:

> In computing the amount of tax levied under this act for any month, a taxpayer may deduct the amount of bad debts from his or her gross proceeds used for the computation of the tax. The amount of gross proceeds deducted must be charged off as uncollectible on the books of the taxpayer. If the business consists of taxable and nontaxable transactions, the deduction shall equal the full amount of the bad debt if the bad debt is documented as a taxable transaction in the taxpayer's records.

eral Sales Tax Act and that plaintiff was entitled to the deduction.

Following the defendant's appeal, the Court of Appeals reversed the judgment of the Court of Claims in a unanimous opinion. 222 Mich App 203; 564 NW2d 82 (1997). It concluded that the appropriate test for determining whether a retail sale takes place in Michigan, for purposes of the General Sales Tax Act, is whether the sale was consummated within the state. After deciding that the transactions in the instant case took place in Illinois, the Court of Appeals held that the Use Tax Act applies to plaintiff's sales. It then held that the failure of the act to provide a bad-debt deduction is not a violation of the Commerce Clause of the United States Constitution. This Court granted plaintiff's application for leave to appeal. 458 Mich 860 (1998).

## II. ANALYSIS

### A. CORRECT TAX CHARACTERIZATION

The first question is whether the Court of Appeals was correct in finding that plaintiff's transactions involving Michigan customers were taxable under the Use Tax Act.

Under the General Sales Tax Act, persons "engaged in the business of making sales at retail" must pay an annual tax "for the privilege of engaging in that business . . . ." MCL 205.52(1); MSA 7.522(1). "Sale at retail" is defined in relevant part as:

> a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is

made in the ordinary course of the transferor's business . . . . [MCL 205.51(1)(b); MSA 7.521(1)(b).]

As it is a "privilege tax," the sales tax is imposed directly on the seller. However, the seller may pass it on to the purchaser and collect it at the point of sale. *Sims v Firestone Tire & Rubber Co*, 397 Mich 469; 245 NW2d 13 (1976); *Detroit & Cleveland Navigation Co v Dep't of Revenue*, 342 Mich 234, 238; 69 NW2d 832 (1955).

In contrast with the General Sales Tax Act, the Use Tax Act provides for an excise tax for the "privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6%[5] of the price of the property or services specified . . . ." MCL 205.93(1); MSA 7.555(3)(1). The Use Tax Act places the ultimate liability on the consumer. MCL 205.97; MSA 7.555(7). However, sellers with sufficient connection to Michigan are required to collect the tax and remit it to the Department of Treasury. MCL 205.95(a);   MSA 7.555(5)(a), MCL 205.97; MSA 7.555(7).[6]

The provisions of the General Sales Tax Act and the Use Tax Act are complementary. *Elias Bros Restaurants, Inc, supra* at 153. Thus, as a general rule, property for which a consumer has already paid a use tax is not subject to the provisions of the General Sales Tax Act. *Id.* at 153, n 19. Similarly, the Use Tax

---

[5] Four percent at the time of the instant dispute.

[6] We note that the plaintiff has not challenged its obligation to collect moneys under the act ultimately found to be applicable. We therefore need not discuss whether plaintiff has a "substantial nexus" with Michigan to support an obligation to act as a collection agent for the state under the Use Tax Act. See, e.g., *Quill Corp v North Dakota*, 504 US 298; 112 S Ct 1904; 119 L Ed 2d 91 (1992).

Act does not apply to property sold in Michigan on which Michigan sales tax has already been paid, if the tax was due and paid on the retail sale to a consumer. MCL 205.94(a);  MSA 7.555(4)(a). Also, use tax is not owed on goods already subjected to certain other sales or use taxes in another state. MCL 205.94(e); MSA 7.555(4)(e).

Plaintiff urges the Court of Claim's rationale that, because plaintiff engages in "sufficient local activity" in Michigan, its sales come within the purview of the General Sales Tax Act, regardless of where they occur. However, as the Court of Appeals noted, the question of "substantial activity" relates to whether an out-of-state taxpayer has sufficient nexus with the taxing state for it constitutionally to impose any tax at all. See, e.g., *Beitzel v Dep't of Revenue*, 2 Mich App 311, 313-314; 139 NW2d 780 (1966),  and *Kellogg Co v Dep't of Treasury*, 204 Mich App 489; 516 NW2d 108 (1994). See also *Scripto, Inc v Carson*, 362 US 207; 80 S Ct 619; 4 L Ed 2d 660 (1960). Nexus is not in dispute here. Finding that sufficient local activity exists to justify imposition of a tax does not assist in deciding which tax to impose, given the choice of two taxes.

Defendant requests that we hold that the definition of "sale at retail" under the General Sales Tax Act includes only sales consummated within Michigan. It argues that such a finding would be consistent with the act's definition of a taxable "sale at retail": "a transaction by which the ownership of tangible personal property is transferred for consideration . . . ." MCL 205.51(1)(b);  MSA 7.521(1)(b). Defendant also argues that the requested holding comports with the concept that the sales tax is imposed upon sellers for

the privilege of selling personal property at retail within Michigan. *Detroit & Cleveland Navigation Co, supra* at 238. We agree.

We find that the United States Supreme Court decision in *Oklahoma Tax Comm v Jefferson Lines, Inc,*[7] provides appropriate guidance here. The Court's primary focus in *Oklahoma Tax Comm* was on whether the state could constitutionally impose a sales tax on the purchase of a bus ticket to be used in interstate travel. However, the Court also discussed the general nature of what properly constitutes an in-state sale for taxing purposes:

> A sale of goods is most readily viewed as a discrete event facilitated by the laws and amenities of the place of sale, and the transaction itself does not readily reveal the extent to which completed or anticipated interstate activity affects the value on which a buyer is taxed. We have therefore consistently approved taxation of sales without any division of the tax base among different States, and have instead held such taxes properly measurable by the gross charge for the purchase, regardless of any activity outside the taxing jurisdiction that might have preceded the sale or might occur in the future.
>
> Such has been the rule even when the parties to a sales contract specifically contemplated interstate movement of the goods either immediately before, or after, the transfer of ownership. The sale, we held, was "an activity which . . . is subject to the state taxing power" so long as taxation did not "discriminat[e]" against or "obstruc[t]" interstate commerce, and we found a sufficient safeguard against the risk of impermissible multiple taxation of a sale in the fact that it was consummated in only one State. As we put it in [*McGoldrick v Berwind-White Coal Mining Co*, 309 US 33; 60 S Ct 388; 84 L Ed 565 (1940)] a necessary condition for imposing the tax was the occurrence of "a local activity,

---

[7] 514 US 175; 115 S Ct 1331; 131 L Ed 2d 261 (1995).

delivery of goods within the State upon their purchase for consumption." So conceived, a sales tax on coal, for example, could not be repeated by other States, for the same coal was not imagined ever to be delivered in two States at once. Conversely, *we held that a sales tax could not validly be imposed if the purchaser already had obtained title to the goods as they were shipped from outside the taxing State into the taxing State by common carrier. The out-of-state seller in [McLeod v J E Dilworth Co,* 322 US 327; 64 S Ct 1023; 88 L Ed 1304 (1944)] *"was through selling" outside the taxing State.* In other words, the very conception of the common sales tax on goods, operating on the transfer of ownership and possession at a particular time and place, insulated the buyer from any threat of further taxation of the transaction. [*Id.* at 186-187 (citations omitted; emphasis added).]

Consequently, we hold that the correct test for deciding whether a sales transaction is subject to a sales, not a use, tax is whether it was consummated within the state. Only a transaction consummated within Michigan is a taxable "sale at retail" under MCL 205.51(1)(b); MSA 7.521(1)(b).

Our holding lessens the danger of double taxation. It comports with the principle that the sales tax is to be imposed on sellers for the privilege of selling personal property at retail in this state and this state only. *Detroit & Cleveland Navigation Co, supra* at 238. Therefore, the question before us becomes whether plaintiff's sales to its Michigan customers were consummated in Michigan. We hold that they were not.

Under the facts presented, plaintiff's sales transactions were consummated in Illinois. Although its independent contractors solicited orders from customers and entered into tentative agreements with them in Michigan, the purchase applications were approved in

Illinois. Moreover, title to the encyclopedias was transferred to the Michigan purchasers in Illinois when plaintiff placed them on a common carrier for shipment. MCL 440.2401(2); MSA 19.2401(2).[8] Two parties can form a present contract for the sale of an item to take place in the future in a different location.[9] Similarly, plaintiff's customers contracted in Michigan for sales to take place in Illinois, following their approval at plaintiff's headquarters.

Under the language of *Oklahoma Tax Comm*, *supra*, plaintiff was "through selling" the encyclopedias when it approved the transactions in Illinois and loaded the encyclopedias onto a common carrier for shipment. As we stated in the similar case of *J B Simpson, Inc v O'Hara*,[10] "[t]he sale is not completed until the order is accepted and if not accepted there is no sale."

Therefore, we hold that the "sale at retail" to plaintiff's customers occurred in Illinois, not in Michigan. As a result, we conclude that the Court of Appeals correctly found that the instant transactions were properly subject to the provisions of the Use Tax Act, not the General Sales Tax Act.

---

[8] The Court of Appeals stated that the record does not disclose whether plaintiff and its customers intended title to pass upon placement of the goods on the common carrier or upon receipt. However, we note that the motion for summary disposition indicates plaintiff's stipulation that title passed upon delivery to the common carrier.

[9] See, e.g., *Lorenz Supply Co v American Standard, Inc*, 419 Mich 610, 625; 358 NW2d 845 (1984) (noting that MCL 440.2106; MSA 19.2106 defines "contract for sale" as both a "present sale of goods and a contract to sell goods at a future time." [BRICKLEY, J., concurring]).

[10] 277 Mich 55, 59; 268 NW 809 (1936).

B. PLAINTIFF'S TAX LIABILITY UNDER THE USE TAX ACT

Because the Use Tax Act applies to plaintiff's transactions involving Michigan customers, we need to determine plaintiff's tax liability under the act. Specifically, we are asked to decide whether the unavailability of a bad debt deduction in the Use Tax Act violates the Commerce Clause of the United States Constitution. However, we conclude that it is unnecessary to reach this issue. We find, instead, that defendant improperly held plaintiff liable for the uncollected use taxes, since plaintiff was without fault in failing to collect the taxes from its Michigan consumers.

As correctly noted by the Court of Appeals in *Michigan Bell Telephone Co v Dep't of Treasury*,[11] an examination of interrelated provisions of the Use Tax Act supports the conclusion that a seller's liability under the act is secondary in nature. It arises only when there is some fault on the seller's part in failing to collect the taxes from its customers.

MCL 205.97; MSA 7.555(7) states:

> Each consumer storing, using or otherwise consuming in this state tangible personal property or services purchased for or subsequently converted to such purpose or purposes shall be liable for the tax imposed by this act, and such liability shall not be extinguished until the tax has been paid to the department. The payment to the department of the tax, interest and any penalty assessed by the department shall relieve the seller, who sold the property or services with regard to the storing, use or other consumption on which the tax was paid from the payment of the amount of the tax which he may be required under this act to collect from the purchaser.

---

[11] 229 Mich App 200; 587 NW2d 770 (1998).

Unlike the General Sales Tax Act, where the primary tax liability falls on the seller, the use tax is a tax on the consumption of goods. It is levied "for the privilege of using, storing, or consuming tangible personal property . . . or services . . . ." MCL 205.93(1); MSA 7.555(3)(1). See also *National Bank of Detroit v Dep't of Revenue*, 334 Mich 132, 141; 54 NW2d 278 (1952).

However, the use tax also requires each seller to collect the "tax imposed by this act from the consumer." MCL 205.95(a); MSA 7.555(5)(a). In addition, it imposes certain tax liabilities for the seller's failure to do so:

> In case any seller who is required or authorized to collect the tax fails to do so, he shall be liable personally for such amount as he failed to collect together with penalty and interest thereon. In such case, the department shall have power to make an assessment against such seller, based upon any information in, or which shall come into its possession. [MCL 205.99; MSA 7.555(9).]

Finally, the use tax provides criminal sanctions for a seller's failure to comply either with the collection requirements or with any other provisions of the act:

> Any seller who fails, neglects or refuses to collect the tax as required by this act, or fails, neglects or refuses to comply with the provisions of this act, or excepting as expressly authorized pursuant to this act, refunds, remits or rebates to a consumer, either directly or indirectly and by whatsoever means, all or any part of the tax levied by this act, or makes in any form of advertising, verbal or otherwise, any statements which might imply he is absorbing the tax or paying the tax for the consumer by an adjustment of prices or at a price including the tax, or in any other manner whatsoever, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $100.00 nor

more than $500.00, and upon conviction for a second or subsequent offense shall be fined not less than $500.00 nor more than $5,000.00, or imprisoned in the county jail not more than 1 year, or by both such fine and imprisonment in the discretion of the court. [MCL 205.106; MSA 7.555(16).]

The question presented is whether the cited sections, when read together, recast a seller's collection duties under the Use Tax Act. Does the seller become primarily responsible to pay the tax when, through no fault of its own, it cannot collect it? We join with the Court of Appeals in *Michigan Bell, supra,* in holding that these sections do not require a seller to become, in effect, its customers' use-tax payment guarantor.

Defendant would have this Court interpret the Use Tax Act at MCL 205.99; MSA 7.555(9) as permitting defendant to assess the tax against a seller whenever the consumer does not pay it. It argues that the language of this section does not excuse the seller from collecting the use tax from consumers after the seller has reasonably attempted to do so. Essentially, defendant asks us to interpret the Use Tax Act in a way that requires a seller to become, without condition, its customers' use-tax payment guarantor. We decline to do so.

We note first that the appropriate party to pay a use tax is the consumer, not the seller. Previously, in *Lockwood v Comm'r of Revenue,*[12] we recognized that the seller is required to collect the use tax on behalf of the state. However, the Legislature placed the ultimate burden of paying the tax on the consumer or purchaser, because it is the party exercising the privi-

---

[12] 357 Mich 517, 527; 98 NW2d 753 (1959).

lege of use, storage, or consumption. MCL 205.97; MSA 7.555(7). We stated:

> As a practical proposition [the use tax and the sales tax] are assessed on different privileges, and the legal incidence of the tax falls in one case on the retailer and in the other on the user, storer or consumer. The fact that the seller of the goods designed for use, storage or consumption in Michigan is required by the statute to collect on behalf of the State the amount due from the purchaser does not alter the situation. The use tax is not imposed on such seller, but, rather, on the party exercising the privilege of use, storage or consumption, as the case may be. One may be charged with the duty of collecting a tax on behalf of government although the ultimate burden of such tax does not rest on him. [*Lockwood, supra* at 527.]

We have been mindful of this primary difference between the sales and use tax, in examining the relevant provisions of the Use Tax Act. We hold that, before the seller is subjected to either tax liability under MCL 205.99; MSA 7.555(9), or criminal penalties under MCL 205.106; MSA 7.555(16), the Use Tax Act requires intent or fault by the seller in its inability to collect the tax from its customers.

When construing these statutory sections, we apply the accepted rule that the terms of statutory provisions having a common purpose should be read in pari materia. *Jennings v Southwood*, 446 Mich 125, 136; 521 NW2d 230 (1994). The object of this rule is to give effect to the legislative purpose as found in statutes on a particular subject. *Id.* at 137. Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies wherever possible. *Gross v General Motors Corp*, 448 Mich 147, 164; 528 NW2d 707

(1995);  *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995).

We hold that our reading of the Use Tax Act is consistent with the Legislature's intent that a seller be held liable for the use tax of its consumers only when the seller acts wrongfully. MCL 205.106; MSA 7.555(16). The criminal penalties it imposes fall only upon a seller who "fails, neglects or refuses to collect the tax as required by this act . . . ." "Fails" could be read as imposing absolute liability. However, its conjunction with the terms "neglect" and "refuses" causes us to conclude that the Legislature intended to require fault by the seller as a basis for criminal liability.

Similarly, MCL 205.99; MSA 7.555(9), imposing tax liability on a seller who fails to collect a use tax when required to do so, can be read as imposing strict liability on the seller. However, we view the provisions together with MCL 205.106;   MSA 7.555(16), MCL 205.93; MSA 7.555(3), and MCL 205.97; MSA 7.555(7). We conclude that the Legislature intended the seller to suffer the tax obligation only if the seller's inability to collect the tax was based on some fault of the seller.

If the seller were liable for use tax when unable to collect it from its customers through no fault of its own, the tax would fall onto the seller. It would, in effect, convert the use tax to a sales tax. See *Lockwood, supra* at 527. Such a holding would effectively remove the distinction between the General Sales Tax Act and the Use Tax Act and render portions of MCL 205.93; MSA 7.555(3) surplusage or nugatory. One of the primary rules of statutory construction is to avoid a construction that would achieve such a result. *Alt-*

*man v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). Thus, we hold that a construction requiring fault on the part of the seller is appropriate under the circumstances of the case.

Defendant required plaintiff to pay use taxes on its uncompleted transactions despite the fact that plaintiff never received payment for the goods sold.[13] Defendant has provided no evidence that plaintiff acted in a commercially unreasonable manner in trying to collect the use tax from its Michigan consumers.

Therefore, we reverse the decision of the Court of Appeals and hold that plaintiff is entitled to a refund of the tax paid.

WEAVER, C.J., and CAVANAGH, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with KELLY, J.

BRICKLEY, J., concurred in the result only.

---

[13] Defendant argues that plaintiff did collect the use tax on the transactions when it collected a down payment on each sale. However, defendant presents no authority or factual evidence to support its assertion. We agree with plaintiff that the money collected is more readily characterized as a down payment on the books, only. It would be unreasonable to label that initial payment as the "use tax" payment when plaintiff never received the rest of the payment for its educational materials.