ZAHRA, J.
(dissenting). This case is about whether and when the Department of Treasury must afford consumers a rebuttable presumption that no use tax is due. The majority believes that consumers need only be afforded such a presumption when those consumers can prove either that the retailer actually remitted sales tax to the state or that the consumer paid to the retailer the value of the sales tax (an amount equal to the tax imposed on the retailer pursuant to MCL 205.52(1)). I disagree. MCL 205.52(1) only places the burden of paying sales tax on retailers; it does not impose a sales tax on consumers. In light of the fact that, as a matter of law, only the retailer must pay sales tax, this Court should afford consumers a presumption that the retailer actually paid sales tax if it is evident that sales tax was due under the statute. The Treasury may rebut this presumption by producing some evidence, circumstantial or otherwise, that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption. Applied to the present case, I would hold that the consumer is entitled to a presumption that the sales tax was paid. Having considered the *180 record evidence, I would further conclude there was sufficient evidence to rebut this presumption. I would remand to the trial court for further proceedings consistent with this opinion.
I. LAW
This case requires us to interpret the General Sales Tax Act (GSTA)[1] and the Use Tax Act (UTA).[2] When interpreting statutes, we first turn to the words of the statutes. The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature’s intent.[3] The words of a statute provide the most rehable indicator of the Legislature’s intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used.[4] An undefined statutoiy word or phrase must be accorded its plain and ordinary meaning, unless the defined word or phrase is a “term of art” with a unique legal meaning.[5] A court may look beyond the words of a statute to ascertain legislative intent where the statutory language is ambiguous.[6] A statutory provision is ambiguous only if it irreconcilably conflicts with another provision or is equally susceptible to two or more meanings.[7]
The GSTA and the UTA are “complementary and supplementary” statutes,[8] meaning that the provisions *181 of one act are relevant to understanding the provisions of the other.[9] The two statutes are set up so that if Michigan sales tax was paid on an item, then a consumer is not liable for use tax.[10] The GSTA imposes a 6% tax on the sale of all tangible personal property in Michigan:
[T]here is levied upon and there shall be collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act.[11]
Sales tax is not levied on all sales. It is only levied on sales by “persons engaged in the business of making sales at retail,” and only then upon the transfer of “ownership of tangible personal property . . . for consideration.” Furthermore, this Court has held that sales tax is only levied on retail sales of personal property that are consummated in Michigan.[12]
Similarly, the UTA imposes a 6% tax on the use, storage, and consumption of all tangible personal property in Michigan:
*182 There is levied upon and there shall be collected from-every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property or services . .. ,[13]
All consumers must therefore pay use tax unless their transaction is subject to a use tax exemption. There are a number of exemptions to the use tax,[14] the largest of which is the sales tax exception (STE). The STE exempts from use tax any “[pjroperty sold in this state on which transaction a tax is paid under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, if the tax was due and paid on the retail sale to a consumer.”[15]
The majority interprets the STE as being satisfied if sales tax was either “due and paid” by the consumer to the retailer or by the retailer to the Treasury. In my view, this is an improper interpretation of the statute. Consumers are not required to pay tax under the GSTA, and all taxes that are due are only paid to the state, not to retailers. Therefore, it is incorrect to say that consumers pay sales tax to retailers. While it is common for consumers to speak colloquially about paying sales tax on their purchases, consumers are really only paying the value of the sales tax to the retailer. The direct incidence of the sales tax falls on retailers alone.[16] The *183 majority, in my view, erroneously relies on the language in MCL 205.73(1) for the proposition that the consumer may actually pay tax to a retailer. MCL 205.73(1) states:
A person engaged in the business of selling tangible personal property at retail shall not advertise or hold out to the public in any manner, directly or indirectly, that the tax imposed under this act is not considered as an element in the price to the consumer. This act does not prohibit any taxpayer from reimbursing himself or herself by adding to the sale price any tax levied by this act.
The majority believes that this provision permits retailers to actually tax consumers by “adding. . . any tax levied by” the act to the sale price. Not so. As stated in the provision itself, this is a reimbursement for a tax that the retailer must pay to the state. It is not a tax on the consumer. Thus, when the STE requires that sales tax be paid, the only reasonable interpretation of this requires that the retailer owed the tax and paid it to the state. The statute says nothing about what consumers must pay because consumers are only required to pay use tax, never sales tax.[17] Both taxes are due and remitted solely to the state.
This Court has understood the STE to be “an expression of a legislative intent to avoid pyramiding of sales and use tax.”[18] In other words, this Court reads MCL 205.52(1), MCL 205.93(1), and MCL 205.94(l)(a) as a scheme created to avoid double taxation on the same transaction. This is because these three statutes, viewed as a whole, create a system that completely *184 exempts consumers from liability for a 6% use tax if a 6% sales tax was paid by the retailer.[19]
In a series of attempts to respect the Legislature’s intent not to double-tax transactions, this Court has created several presumptions to help retailers and consumers determine who must pay the 6% tax. For example, in World Book v Dep’t of Treasury, this Court chose to “lessen[ ] the danger of double taxation” by creating a presumption that “a sales transaction is subject to a sales, not a use, tax” when the transaction “was consummated within the state” since “[o]nly a transaction consummated within Michigan is a taxable ‘sale at retail’ ” under the statute.[20] This Court in World Book reasoned that such a presumption would clarify the transactions on which sales tax, as opposed to use tax, was due.[21] This Court held that sales tax was not due on an out-of-state transaction and that the purchasers were therefore required to pay use tax.[22] The Court of Appeals employed a similar presumption in Combustion Engineering v Dep’t of Treasury,[23] The court held that a consumer who purchased an item from a retailer, the price of which reflected the value of the sales tax, was entitled to a presumption that it need not pay use tax on the item.[24] The court in Combustion Engineering came to the conclusion that there was no statutory *185 requirement that the consumer “prove that the [value of the] sales tax it paid to vendors was actually remitted to the state.”[25] This is because “the retailer has the ultimate responsibility for the payment of sales tax,” and “[t]he General Sales Tax Act places no duty on a consumer for the payment of the [sales] tax.”[26]
Another provision of the GSTA, MCL 205.73(1), makes it clear that retailers are solely responsible for paying sales tax and cannot mislead the consumer into believing that sales tax is not paid on a retail sale. Specifically, MCL 205.73(1) prevents retailers from “advertising] or holding] out to the public in any manner, directly or indirectly, that [sales tax] is not considered as an element in the price to the consumer.” In Swain Lumber Co v Newman Dev,[27] this Court held that MCL 205.73(1) has the effect of placing the burden of paying sales tax on the retailer, even if the retailer mistakenly believed that it was entitled to an exemption. The bar in MCL 205.73(1) on retailers’ “advertising] or holding] out.. . that [sales tax] is not considered as an element in the price to the consumer” therefore affects the parties’ contract for the goods: in the absence of a contrary agreement, a retailer has impliedly promised to pay sales tax to the Treasury.[28]
Although there is no express provision addressing who must prove that a retailer paid sales tax, there are several provisions in the GSTA and the UTA that imply that the Legislature has placed that burden on retailers, *186 not on nonretailer consumers. The recordkeeping requirement in the GSTA currently states:
A person liable for any tax imposed under [the Sales Tax] Act shall keep ... an accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires. If an exemption from the tax under this act is claimed by a person because the sale is for resale at retail, a record shall be kept of the sales tax license number if the person has a sales tax license. These records shall be retained for a period of 4 years after the tax imposed under this act to which the records apply is due or as otherwise provided by law.[29]
This provision requires only persons liable for sales tax (that is, retailers)[30] to “keep accurate and complete beginning and annual inventory and purchase records of. .. daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires.”[31] Overall, the above provision, MCL 205.68(1), requires that these retailers retain sales tax records only “for a period of 4 years after the [sales tax] is due or as otherwise provided by law.” Accordingly, MCL 205.68(1) creates a system under which retailers will have complete records of the transactions upon which they have and have not paid sedes tax.
The UTA also includes a recordkeeping requirement, which currently provides:
*187 A person in the business of selling tangible personal property and liable for any tax under this [Use Tax] act shall keep ... accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires. If an exemption from use tax is claimed by a person because the sale is for resale at retail, a record shall be kept of the sales tax license number if the person has a sales tax license. These records shall be retained for a period of 4 years after the tax imposed under this act to which the records apply is due or as otherwise provided by law.[32]
Under this recordkeeping requirement, the Legislature requires that any person who is both “in the business of selling tangible personal property and liable for” use tax — that is, retailers — keep “daily sales records, receipts, invoices, and bills of lading.”[33] Like the recordkeeping provision in the GSTA, this provision only requires that use tax records be retained by retailers for four years.[34]
II. ANALYSIS
Based on the structure of the GSTA and the UTA and the cases that create presumptions to avoid double taxation, I conclude that a nonretailer consumer is entitled to a rebuttable presumption that sales tax was paid if it was due. The Treasury may rebut this presumption by producing some evidence, circumstantial or otherwise, that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present *188 evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption.
A. THE BURDEN OF RECORDKEEPING
The GSTA and the UTA do not state who bears the burden of proving that sales tax was actually paid by the retailer for the purpose of attaining the STE. But between the two recordkeeping requirements, MCL 205.68(1) and MCL 205.104a(l), above, the Legislature clearly created a system in which retailers are charged with keeping for four years the records that document whether sales tax and use tax were actually paid on an item. Retailers are also charged with keeping track of “beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, [and] bills of lading.”[35] These recordkeeping requirements permit the Treasury to determine whether a retailer has paid the correct amount of sales tax during the four years that retailers are required to keep such records.[36]
In my view, it is noteworthy that the Legislature did not decide to put similar recordkeeping requirements on consumers. Under the expressio unius est exclusio alterius rule of statutory construction, a statute’s express mention of one thing implies the exclusion of other similar things.[37] Thus, by choosing to impose recordkeeping requirements on retailers that would *189 permit the Treasury to determine whether sales tax was indeed paid on an item, the Legislature chose not to require consumers to document (and thereby prove) whether sales tax was actually paid.
This reading fits with other parts of the two statutes. For example, though the GSTA prohibits retailers from “advertising] or holding] out to the public in any manner, directly or indirectly, that [sales tax] is not considered as an element in the price to the consumer,”[38] it also does not require that the cost of sales tax be passed on to the consumer. Rather, a retailer may choose to pay the sales tax on an item without the benefit of collecting the value of the tax from the consumer. Stated differently, the retailer may elect to pay the tax out of its own pocket.[39] By permitting situations such as this, the Legislature created a scheme in which a consumer would have no knowledge about whether a retailer actually remitted sales tax to the Treasury. Despite this, the Legislature decided against putting recordkeeping requirements on nonretailer consumers.
In this case, the rule that the Treasury proposes runs afoul of the Legislature’s intent as demonstrated by the language and structure of the statutes. The Treasury demands that Andrie, a nonretailer consumer, prove that the retailers from which it purchased fuel, provisions, supplies, maintenance, and repairs actually remitted sales tax to the state. With regard to the Treasury’s proposed rule, I inquire: By what means can a consumer prove this? The Treasury’s answer to this question is unconvincing. The Treasury suggests that only “business” consumers, like Andrie, should be required to prove that *190 sales tax was actually remitted to the state. The Treasury also suggests that this should be easy for business consumers to prove because businesses keep records of their transactions and receipts, and the value of sales tax is easily included as a line item on receipts. I disagree with the Treasury for two reasons. First, the GSTA and UTA do not distinguish between business consumers and individual consumers.[40] The only distinction made by the statutes is between retailer consumers and nonretailer consumers;[41] businesses can be either. Second, the Treasury overlooks the fact that there is no requirement that retailers include the value of the sales tax on the receipt or pass along the cost of sales tax to the purchaser. As previously stated, a retailer may choose to pay sales tax out of its own pocket.[42] If it does, a consumer may be left with no proof that the retailer meant to remit or believed that it owed sales tax.
The problem with the Treasury’s proposed rule, therefore, is that it effectively eliminates the STE unless and until a consumer can produce documentation that another party paid what it owed to the state. The Treasury does not, however, suggest how a consumer ought to go about collecting such information, which would not be available until sometime after the sale. The Treasury’s proposed rule is even more troublesome in this case because even the retailer may no longer know whether it paid sales tax because retailers are required to keep records for four years *191 only.[43] Here, the Treasury required Andrie to prove that its retailers paid sales tax on some transactions that occurred more than four years prior.[44] This is unacceptable. The statute only places a recordkeeping burden on consumers if they are also retailers, and this burden only remains in place for four years. It seems nearly certain that the Legislature did not intend to require nonretailer consumers to retain any purchase and sale records. Thus, it is even less likely that the Legislature intended that consumers keep such records for longer than four years, as the majority requires from Andrie.
B. AVOIDING DOUBLE TAXATION
Because the Treasury’s rule would require every consumer to prove the occurrence of something outside of the consumer’s control (that retailers actually remitted sales tax to the Treasury), the rule presents the likelihood of double taxation. The high cost consumers will face if they are forced to demand and collect affidavits or tax returns from every retailer from whom they have purchased will often make the prospect of double taxation the only viable economic alternative. Even if a consumer is willing to incur such costs, there is no guarantee the retailer would comply with the purchaser’s request. As conceded by the majority, compliance with such a request “would come at the grace of the retailer.” Faced with such a high cost and uncertainty, consumers may decide that it is less trouble to *192 pay use tax to the Treasury upon demand, even if the consumer believes that the retailer paid sales tax.
To prevent the risk of double taxation in other cases, this Court has employed presumptions to clarify who is liable for sales tax and who is liable for use tax. For example, in World Book, this court employed a presumption that “a sales transaction is subject to a sales, not a use, tax” when the transaction “was consummated within the state” because “[o]nly a transaction consummated within Michigan is a taxable ‘sale at retail’ under [the statute].”[45] The Court of Appeals utilized a similar presumption in Combustion Engineering, holding that a consumer was entitled to a presumption that it need not pay use tax on a transaction when the consumer had purchased an item from a retailer with the value of the sales tax included on the receipt.[46]
The instant case is similar to Combustion Engineering, which recognized that although sales tax must be paid before a consumer is entitled to the STE, consumers should be afforded a presumption that sales tax was paid, despite the fact that the consumer in that case could not prove that the retailer actually paid the tax it owed. The only difference between this case and Combustion Engineering is that in Combustion Engineering, it was clear that the retailer had passed the cost of the sales tax on to the consumer via an increase in purchase price. At most this suggests that the retailer realized that sales tax was due. In this case, Andrie’s receipts are devoid of any mention of sales tax. Thus, it is unclear *193 whether Andrie’s retailers charged Andrie the value of the sales tax, paid the sales tax out of their own pockets, or believed that the transaction was exempted from sales tax.
C. THE RULE OF ELIAS BROS SHOULD NOT APPLY TO THE STE
Notwithstanding the Legislature’s direction that sales tax be imposed only on retailers, the textual clues found in the statutory recordkeeping provisions and this Court’s jurisprudence employing presumptions against double taxation, the majority erroneously relies on Elias Bros Restaurant v Treasury Dep’t for its proposition that “[b]ecause tax exemptions are disfavored, the burden of proving entitlement to an exemption rests on.. . the party asserting the right to the exemption.”[47] I do not believe the Elias Bros holding should be extended to the STE, which is a different exemption from the exemption discussed in Elias Bros. Indeed, the rule in Elias Bros has never been applied to the STE, and for good reason — the purpose behind the Elias Bros rule is simply not served when applied to the STE.
It is significant that the rule in Elias Bros is a judicial rule, not a statutory rule.[48] Judicial rules are not *194 accorded the same weight as statutory rules.[49] Had the Legislature enacted as part of its tax structure a provision declaring that all tax exemptions are disfavored and placing on the party seeking to invoke an exemption the burden of proving entitlement to it, this Court would be required to apply and follow this legislative directive without further consideration. But because Elias Bros is a judicially created rule, this Court can and should consider whether this rule should be extended to the STE.
This Court crafted the Elias Bros rule because the GSTA and the UTA do not describe who bears the burden of proving entitlement to the various exemptions available under the UTA. In general, the Elias Bros rule is premised on the notion that “tax exemptions .. . represent the antithesis of tax equality.”[50] That is, the tax structure assumes taxpayers will be taxed according to law and, when an exemption is employed, tax inequality results because the taxpayer invoking the exemption is paying less than those not afforded the exemption.
The majority claims that creating a presumption that sales tax was paid if it was due will violate the rationale of the Elias Bros rule because it will tend to create inequality by favoring a tax exemption. In fact, to apply the Elias Bros rule to the STE, as the majority does, would have the effect of creating greater inequality of taxation. As explained previously, the Legislature cre *195 ated a system of sales tax and use tax that together creates one 6% tax on each transaction for the sale of personal property in Michigan. If this Court applies Elias Bros to the STE, consumers may be forced to prove that their retailers actually paid sales tax to the state. This rule presumes that a Michigan retailer violated the law by not paying sales tax when it was due, which is contrary to the common law “presumption, that every man has conformed to the law, [which] shall stand till something shall appear to shake that presumption.”[51] Furthermore, it is also unlikely that a consumer could prove that a Michigan retailer complied with the law. Because it is unlikely that consumers will be able to prove retailer compliance, the Elias Bros rule will result in double taxation on property the Legislature intended to be taxed only once. That is, since it is common for retailers to reimburse themselves by adding the value of the sales tax to the retail price, if any consumer cannot prove that their retailer paid sales tax to the state, that consumer could be forced to both reimburse the retailer for the value of the sales tax and pay use tax. This would treat one consumer differently than other consumers, leading to greater tax inequality.
*196 The Elias Bros rule simply is not useful when applied to the STE because the consumer does not possess the information it will be forced to produce — that is, information about whether a retailer actually remitted to the state the sales tax due. On the contrary, as previously established, such information would be costly, if not impossible, for the majority of consumers to obtain. It serves no purpose for this Court to extend Elias Bros on its own initiative so it can force consumers to produce information they do not have and cannot obtain with reasonable certainty or at a reasonable cost.
D. THE PRESUMPTION AND REBUTTING THE PRESUMPTION
Because the GSTA and UTA already supply a record-keeping requirement, and since this Court interprets those Acts in a way that avoids double taxation, I conclude that this Court should afford consumers a presumption that if sales tax was due on a transaction, that it was actually paid by the retailer. Nonetheless, the Treasury should be able to rebut such a presumption.[52] The Treasury may rebut this presumption by producing some evidence, circumstantial or otherwise, that sales tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have exempted the transaction from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption.
*197 In this case, the Treasury has presented evidence sufficient to rebut the presumption that sales tax was paid by the retailer. Specifically, there is circumstantial evidence that at least one of the contracting parties represented, at the time of the sale, facts that would have exempted the sales of fuel, provisions, supplies, maintenance, and repairs from both sales tax and use tax. This circumstantial evidence came to light at the Court of Claims, as Andrie claimed that its fuel, provisions, supplies, maintenance, and repairs were entitled to a use tax exemption under MCL 205.94(l)(j), which exempts purchases of fuel, provisions, supplies, and tangible property required to maintain and repair vessels “designed for commercial use of registered tonnage of 500 tons or more.”[53] Any purchase exempted from use tax in MCL 205.94(l)(j) also qualifies for an exception from sales tax under MCL 205.54a(d).[54] Therefore, because there is evidence that the retailer did not pay sales tax on the item, the Treasury has rebutted the presumption that sales tax was paid.
Based on this portion of the record, I conclude that Andrie is not entitled to the presumption that its retailers actually paid sales tax on the transactions for fuel, provisions, supplies, maintenance, and repairs for which it claimed an exemption under MCL 205.94(l)(j). If Andrie cannot prove that the retailers actually paid sales tax, Andrie must remit use tax to the Treasury. I *198 would remand this case to the trial court for further proceedings consistent with this dissent.[55]
III. CONCLUSION
Because MCL 205.52(1) only places the burden of paying sales tax on retailers, and not on consumers, this Court should afford consumers a presumption that retailers actually paid sales tax if it is evident that sales tax was due under the statute. I would permit the state to rebut this presumption by producing some evidence, circumstantial or otherwise, that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption. I would remand to the trial court for further proceedings consistent with this opinion. I would not retain jurisdiction.

 MCL 205.51 et seq.

 MCL 205.91 et seq.

 People v Flick, 487 Mich 1, 10; 790 NW2d 295 (2012).

 Id. at 10-11.

 People v Thompson, 477 Mich 146, 151-152; 730 NW2d 708 (2007).

 Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 See Lansing Mayor v Pub Serv Comm, 470 Mich 154, 166; 680 NW2d 840 (2004).

 Elias Bros Restaurants, Inc v Treasury Dep’t, 452 Mich 144, 153; 549 NW2d 837 (1996).

 Id. (“The provisions in the Sales Tax Act are relevant to use tax determinations because the sales and use tax provisions are complementary and supplementary. Both statutes contain a recognition ... of the provisions and operation of the other.”) (Quotation marks omitted.)

 See MCL 205.52(1) (defining the amount of sales tax and the sales to which it applies); MCL 205.54a (listing sales exempt from sales tax); MCL 205.93(1) (defining the use tax); MCL 205.94(l)(a) (exempting from use tax any property sold in Michigan on which sales tax is paid under the GSTA).

 MCL 205.52(1).

 See World Book, Inc v Treasury Dep’t, 459 Mich 403, 410-411; 590 NW2d 293 (1999).

 MCL 205.93(1).

 For example, in this ease, Andrie originally claimed that it was entitled to the exemption in MCL 205.94(l)(j) for “fuel, provisions, supplies, maintenance, and repairs for the exclusive use of a vessel of 500 tons or more engaged in interstate commerce.”

 MCL 205.94(l)(a).

 MCL 205.52(1). See also Combustion Engineering v Treasury Dep’t, 216 Mich App 465, 468-469; 549 NW2d 364 (1996) (“[Tjhe retailer has the ultimate responsibility for the payment of sales tax. The General Sales Tax Act places no duty on a consumer for the payment of the tax.”).

 See MCL 205.52(1) (providing that sales tax “shall he collected from all persons engaged in the business of making sales at retail,” not from consumers, as it is a “tax for the privilege of engaging in that business”).

 Gen Motors Corp v Treasury Dep’t, 466 Mich 231, 237; 644 NW2d 734 (2002).

 But since the tax must be actually paid by the retailer, MCL 205.94(l)(a) leaves open the possibility that the Treasury can recover a use tax from the consumer on the occasion that the retailer breaks the law and fails to pay sales tax.

 World Book, 459 Mich at 410-411.

 See id. at 408-409, 411, 413-418.

Id.

 Combustion Engineering, 216 Mich App 465.

 Id. at 468. The court in Combustion Engineering fell prey to the same incorrect colloquialism that the majority does: it referred to consumers paying sales tax to retailers. As noted, taxes are only paid to the *185 government, never to retailers. The only thing remitted hy the consumer to the retailer was the value of the sales tax.

 Id. at 469.

 Id. at 468-469.

 Swain Lumber Co v Newman Dev, 314 Mich 437; 22 NW2d 891 (1946).

 Id. at 441.

 MCL 205.68(1). We note that this provision has been amended several times and renumbered since the period at issue in this case; however, those changes do not affect our analysis. See MCL 205.67 as amended by 1995 PA 255.

 MCL 205.52(1).

 MCL 205.68(1).

 MCL 205.104a(l).

 Id.

 Id.

 MCL 205.68(1). See also MCL 205.104a(l) (requiring retailers to keep records of “beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, [and] bills of lading”).

 See MCL 205.52(1) (requiring retailers to pay a tax “equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act”).

 See Bradley v Saranac Community Sch Bd of Ed, 455 Mich 285, 298; 565 NW2d 650 (1997).

 MCL 205.73(1).

 Id.

 See, e.g. MCL 205.94(l)(a).

 See MCL 205.68(1) (requiring all retailers, whether or not they are consumers, to keep records); MCL 205.104a(l) (same).

 See MCL 205.73(1) (permitting, but not requiring retailers to pass along the cost of the sales tax to the purchaser by “adding to the sale price any tax levied by this [Sales Tax] act”).

 See MCL 205.68(1); MCL 205.104a(l).

 The Treasury conducted audits of Andrie from the tax period beginning November 1, 1999 and ending December 31, 2004, and for the tax period beginning January 1, 2005 and ending July 31, 2006. If the Treasury was auditing Andrie for its 2006 taxes, then at least the 1999-2001 taxes were more than four years old.

 Id. The Court in World Book reasoned that such a presumption would clarify the transactions upon which sales tax, as opposed to use tax, was due. Cf. id. at 408-409, 411, 413-418 (holding that sales tax was not due on an out-of-state transaction and that the purchasers were therefore required to pay use tax).

 Combustion Engineering, 216 Mich App at 468.

 Elias Bros, 452 Mich at 150.

 The judicial rule cited by Elias Bros can be traced back via citation to Romeo Homes v Nims, 361 Mich 128, 137; 105 NW2d 186 (1960), but the rule is older than that. See, e.g., City of Detroit v Detroit Commercial College, 322 Mich 142, 149; 33 NW2d 737 (1948) (“[T]he burden is on a claimant to establish clearly his right to exemption ... .”); Engineering Soc of Detroit v Detroit, 308 Mich 539, 542; 14 NW2d 79 (1944) (“The burden of establishing the fact [that a given institution is a scientific or educational institution within the meaning of the tax exemption statutes] rests on plaintiffs .. . .”). Upon reading Detroit Commercial College, it becomes clear that the rule that this Court has adopted is supported by a hornbook (or perhaps several hornbooks) about how to *194 interpret tax codes. See Detroit Commercial College, 322 Mich at 148-149, citing 2 Cooley on Taxation (4th Ed), p 1403, § 672. Because this Court never cites to a statute to defend the rule, it is a judicial rule, not a statutory one.

 See, e.g., People v Goldston, 470 Mich 523, 541; 682 NW2d 479 (2004) (referring to the exclusionary rule as “judicially created” and “nonbinding”).

 Elias Bros, 452 Mich at 150.

 Tecom Inc v United States, 66 Fed Cl 736, 758 n 26 (2005); see also id. at 758 (citing English common law and United States Supreme Court precedent from the 1800s for the maxim that persons are presumed to have conformed to the law unless and until evidence appears to the contrary). The appropriate legal maxim for this is “Omniapraesumuntur rite, legitime, solemniter esse acta donee probetur in contrarium,” meaning “All things are presumed to have been properly, lawfully, formally done, until proof be made to the contrary.” See also Gray v Gardner, 3 Mass 399 n 1 (1807) {“Omniapresumuntur rite et legitime esse acta donee in contrarium probetur."); cf. Tucker v Streetman, 38 Tex 71, 73 (1873) (“[I]n the civil relations of life ... a party is presumed to have acted legally until the contrary is proven.”).
This presumption is also recognized in Michigan law. See Palmer v Oakley, 2 Doug 433, 462 (Mich, 1847).

 Although critical of the notion that the consumer should be entitled to a presumption, it is worth noting that the majority also applies a presumption, it is just a different one than the one I propose. Whereas I would apply a presumption that sales tax was paid by a retailer if it was due, the majority would apply a presumption that sales tax was paid by a retailer if the retailer charged the value of the sales tax to the consumer.

 The Court of Appeals held that Andrie did not qualify for this exemption, see Andrie, Inc v Treasury Dep’t, 296 Mich App 355, 365-366 (2012), and this Court did not include this issue among those to be briefed by the parties. See Andrie, Inc v Dep’t of Treasury, 493 Mich 900 (2012).

 In its First Amended Complaint, Andrie stated: “Both the Sales Tax Act and the Use Tax Act provide an exemption from sales and use tax for commercial vessels used in interstate commerce that are produced upon special order and for the fuel, provisions, supplies and tangible property required to maintain and repair the vessel. MCL 205.54a(d); MCL 205.94(1)©.”.

 Andrie, on the occasion that it is not able to prove that sales tax was paid, may be able to implead any retailer from whom it purchased fuel and sue for relief based in contract. See generally Swain Lumber, 314 Mich 437.
Andrie may also be able to make an argument that the Treasury still bears the burden of proving that sales tax was not paid on sales that occurred more than four years prior to the Treasury’s demand that Andrie pay use tax. This is because the recordkeeping statutes’ requirement that retailers retain their sales records for only four years could make it difficult or impossible for a nonretailer consumer to obtain an affidavit from a retailer that sales tax was actually paid, thereby leading to double taxation.